IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>      Plaintiff,<br><br>  vs.<br><br>ROBERT H.Y. KAMA,<br><br>      Defendant/Counterclaim Plaintiff/Third-Party Plaintiff,<br><br>  vs.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, BANK OF AMERICA, N.A., AS SUCCESSOR-IN-INTEREST TO BAC HOME LOANS SERVICING, L.P., AND FHLMC S/A 3-DAY ARC-125949,<br><br>      Counterclaim Defendant and Third-Party Defendants. | Civ. No. 14-00137 ACK-KSC |

ORDER DENYING COUNTERCLAIM/THIRD-PARTY PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF RELATED CASES AND GRANTING IN PART AND DENYING IN PART COUNTERCLAIM DEFENDANT AND THIRD-PARTY DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT

**BACKGROUND**[1]

This matter arises from the foreclosure of residential property located on the Big Island of Hawaii. The relevant procedural and factual background is as follows.

On December 22, 2006, Robert Kama and non-party Lisa Kama[2] entered into a transaction with Finance Factors, Limited ("Finance Factors"), obtaining a $180,000 loan ("Note") secured by a mortgage ("Mortgage") on their residence at 17-287 Volcano Road, Kurtistown, Hawaii 96760 ("Property"). (Mot. to Dismiss Exs. A & B.)[3] The State of Hawaii Bureau of Conveyances recorded

_____

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

[2] Robert and Lisa Kama were married at the time the Mortgage was recorded, but divorced in 2011. There is no record of Lisa Kama having been released from liability under the subject Note and Mortgage.

[3] Pursuant to the "incorporation by reference" doctrine, the Court considers the exhibits attached to the instant Motion to Dismiss. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) ("Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).") (internal quotations and citations omitted); and Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that the Ninth Circuit has extended the incorporation by reference doctrine "to situations in which the plaintiff's claim depends on the contents
(continued...)

the Mortgage on December 29, 2006, as document number 2006-239434. (Id. Ex. B.) The Mortgage names Robert and Lisa Kama as "Borrower[s]," Finance Factors as the "Lender," and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Lender and as mortgagee under the Mortgage. (Id.)

On September 22, 2010, MERS, as nominee for Finance Factors, executed an Assignment of Mortgage ("Assignment"), evidencing the assignment of all right, title and interest under the Mortgage to Bank of America, N.A. ("BANA"), as successor-in-interest to BAC Home Loans Servicing, L.P. (Id. Ex. C.) The State of Hawaii Bureau of Conveyances recorded the Assignment on October 7, 2010, as document number 2010-151037. (Id.)

On October 21, 2010, BANA, as mortgagee under the Mortgage, recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice of Sale"). (Id. Ex. D.) On April 21, 2011, the State of Hawaii Bureau of Conveyances recorded a Mortgagee's Affidavit of Foreclosure Under Power of Sale ("Affidavit of Sale"), evidencing the sale of the Property on April 11, 2011, to BANA. (Id. Ex. E.)[4/] On June 22, 2011, BANA,

_____

[3/](...continued)
of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").

[4/]The Affidavit of Sale states that BANA:

(continued...)

3

(a) By certified mail or personal service, caused to be forwarded a Mortgagee's Notice of Mortgagee's Intention to Foreclose Under Power of Sale in form attached hereto as Exhibit "B" and made a part hereof, to all parties who have recorded encumbrances, liens and/or other claims which have attached against the subject mortgaged property, a list of said parties [which includes Robert and Lisa Kama] being attached hereto as Exhibit "C" and made a part hereof.

(b) Not less than 21 days before the date of the public auction sale, caused a copy of Notice of Mortgagee's Intention to Foreclose Under Power of Sale to be posted on the subject mortgaged property, as evidenced by the Return of Posting attached as Exhibit "D" and made a part hereof.

(c) Once in each of three successive weeks, with the last publication having been not less than 14 days before the date of the public auction sale, caused publication in The Honolulu Star-Advertiser, a newspaper having a general circulation in the County of Hawaii, State of Hawaii, an advertisement setting forth a summary description of the subject mortgaged property, the mortgagee's intention to foreclose pursuant to the power of sale under the mortgage, and the date, time, and place for the public auction sale, a copy of which notice is attached hereto as Exhibit "E" and made part hereof.

(d) Upon the scheduled date, time and place, caused said sale to be postponed to 04/11/11. Each postponement was publicly announced by crying out the postponement date at the time and place of the scheduled auction. The sale was conducted and the subject mortgaged property declared sold to BAC Home Loans Servicing, LP, a Texas Limited Partnership or its nominee, for $187,249.20, which was the

(continued...)

as mortgagee, executed a Mortgagee's Quitclaim Deed Pursuant to Power of Sale ("Quitclaim Deed") in which BANA quitclaimed its interest in the Property to Federal Home Loan Mortgage Corporation ("Freddie Mac"). (Id. Ex. F.)

On March 21, 2012, Freddie Mac filed an Ejectment Complaint in the District Court of the Third Circuit, Puna Division, State of Hawaii ("state district court"), to remove Robert Kama (hereinafter "Kama") from the Property. On August 20, 2012, the state district court dismissed without prejudice Freddie Mac's Ejectment Complaint.

Subsequently, on October 18, 2012, Freddie Mac filed an Ejectment Complaint in the Circuit Court of the Third Circuit, State of Hawaii ("state circuit court"). (Id. at 4.)

In response to the Ejectment Complaint, on August 20, 2013, Kama filed in the state circuit court his Counterclaim[5] and Third-Party Complaint (collectively "Third-

---

[4]/(...continued)
        highest bid at said sale.

        (e) Based on the foregoing, none of the
        borrower(s) or mortgagor(s) is in the
        military service as evidenced by a true and
        correct copy of the Department of Manpower
        Data Center report(s), attached hereto as
        Exhibit "F."

(Mot. to Dismiss Ex. E at 2-3.)

    [5]/Kama incorrectly labeled his Counterclaim a "Counter-Complaint." (See Doc. No. 1 ("Notice of Removal") Ex. A.)

Party Complaint") against Counterclaim Defendant Freddie Mac and Third-Party Defendants BANA,[6/] Federal Housing Finance Agency ("FHFA"), and FHLMC S/A 3 Day ARC-125949 ("FHLMC Trust"). (Doc. No. 1 ("Notice of Removal") Ex. A.) The Third-Party Complaint is based primarily on the following allegations.

First, Kama alleges that BANA was not the owner of the Note and Mortgage at the time of foreclosure and, therefore, lacked legal authority to conduct the non-judicial foreclosure of the Property. (Third-Party Compl. ¶¶ 69-71.) According to Kama, BANA was merely the Mortgage servicer, and FHLMC Trust was the actual owner of the Note and Mortgage when the Property was foreclosed upon. (Id. ¶¶ 17 & 70.)

Next, Kama alleges that BANA postponed the Property's foreclosure sale date, but failed to publicly announce the continued sale date. (Id. ¶ 75.) Kama alleges that, as a consequence, he was "unable to ascertain if or when the

---

[6/]The Third-Party Complaint erroneously names "BAC Home Loans Servicing, L.P." (rather than BANA) as a third-party defendant. Exhibit "B" to Kama's opposition to Freddie Mac's Motion for Summary Judgment on the Ejectment Complaint, which was filed in state circuit court, is a letter (dated March 6, 2011) sent from "Bank of America Home Loans" and addressed to Robert and Lisa Kama. The first paragraph of the letter provides: "IMPORTANT MESSAGE ABOUT YOUR LOAN. We want to let you know that effective July 1, 2011, the servicing of home loans by our subsidiary - BAC Home Loans Servicing, LP, will transfer to our parent company - Bank of America, N.A. Based upon our records as of June 26, 2011, your home loan account . . . is affected by this servicing transfer." Because Kama filed his Third-Party Complaint on August 20, 2013, he incorrectly named BAC Home Loans Servicing, L.P. as a third-party defendant.

foreclosure would take place, and other interested bidders were prevented from attending the sale." (Id. ¶ 76.)

Kama also asserts that, after suffering a workplace injury and temporary reduction in his income, he sought a loan modification from BANA through the federal Home Affordable Modification Program ("HAMP") in 2010. (Id. ¶ 20.) Kama claims that a BANA representative named "Bonita" told him "that it looked like he qualified for a HAMP loan modification" and "that as long as he complied with the terms of the paperwork . . . which [were] forthcoming in the mail, he would not be foreclosed on." (Id. ¶ 22.) Kama further claims that he "complied with all requests for paperwork from [BANA] and was told verbally over the telephone by a [BANA] representative in early April 2011, that his HAMP application was complete and no further documentation was needed from him." (Id. ¶ 21.) Additionally, Kama asserts that Bonita told him that she mailed a loan modification agreement to him. (Id. ¶ 77.) According to Kama, BANA foreclosed on the Property while he was waiting for the loan modification agreement to arrive in the mail. (Id. ¶ 24.)

In addition, Kama alleges that BANA failed to send him a "non-approval notice," informing him that his HAMP application had been denied. (Id. ¶ 23.) Kama further alleges that HAMP guidelines required BANA to send the non-approval notice and allow for a thirty-day "borrower response period"

following issuance of that notice before it could foreclose on the Property. (Id. ¶ 27.)

Kama's Third-Party Complaint requests the following relief: set aside the April 11, 2011 foreclosure sale and transfer of title to Freddie Mac; determine that Kama is the prevailing party; and award damages and costs, as well as treble damages, punitive damages, attorney's fees and costs. (Id. at 40.)

On September 11, 2013, Freddie Mac filed a "reply" to the Third-Party Complaint in state circuit court.[7/]

On November 25, 2013, approximately three months after Kama filed his Third-Party Complaint, Freddie Mac filed a Motion for Summary Judgment on the Ejectment Complaint in the state circuit court. (Mot. to Dismiss Ex. G.) On February 25, 2014, the state circuit court granted Freddie Mac's Motion for Summary Judgment. (Id.) On March 10, 2014, the state circuit court entered a "Judgment on Order Granting Plaintiff Federal Home Loan Mortgage Corporation's Motion for Summary Judgment Filed Herein on November 15, 2013, and For Possession." (Id. Ex. H.)

On March 18, 2014, Freddie Mac removed the case to this Court, pursuant to 12 U.S.C. § 1452(f). (Doc. No. 1.) That statute provides that "all civil actions to which [Freddie Mac]

_____

[7/]BANA, FHLMC Trust, and FHFA did not file a responsive pleading to Kama's Third-Party Complaint in state circuit court.

is a party shall be deemed to arise under the laws of the United
States, and the district courts of the United States shall have
original jurisdiction of all such actions, without regard to
amount or value[.]" <u>Id.</u> The statute further provides that any
state action to which Freddie Mac is a party may at any time
before trial be removed to a United States district court by
Freddie Mac. <u>Id.</u>

On April 1, 2014, Freddie Mac, BANA, and FHLMC Trust
(hereinafter, collectively, "Third-Party Defendants") filed the
instant Motion to Dismiss the Third-Party Complaint. (Doc. No.
7.)[8] Third-Party Defendants seek to dismiss the Third-Party
Complaint in its entirety with prejudice and without leave to
amend. (<u>Id.</u>)

Also, on April 1, 2014, FHFA filed a separate Motion
to Dismiss the Third-Party Complaint. (Doc. No. 10.) FHFA's
Motion only seeks to dismiss the Third-Party Complaint's Seventh
Cause of Action. (<u>Id.</u>) On May 13, 2014, however, Kama filed a
"Notice of Voluntary Dismissal of Claims Against Defendant
Federal Housing Finance Agency" wherein Kama voluntarily
dismissed not only the Seventh Cause of Action as to FHFA, but

---

[8]Third-Party Defendants also filed a Motion to Dismiss the
Third-Party Complaint in state circuit court on February 24,
2014. <u>See</u> Circuit Court of the Third Circuit, State of Hawaii,
Electronic Docket, <u>Federal Home Loan Mortgage Corp. v. Kama</u>, Civ.
No. 12-1-0515 (Doc. No. 28.) However, it appears that the state
circuit court did not issue a ruling on Third-Party Defendants'
Motion to Dismiss before the case was removed to this Court.

also every other cause of action in the Third-Party Complaint asserted against FHFA. (Doc. No. 18.) As a result, FHFA is dismissed from this action, and FHFA's Motion is deemed withdrawn.

On August 25, 2014, Kama filed an Opposition to Third-Party Defendants' Motion to Dismiss. (Doc. No. 20.)

On August 29, 2014, Third-Party Defendants filed a Reply in support of their Motion to Dismiss. (Doc. No. 21.)

The Court held a hearing regarding Third-Party Defendants' Motion to Dismiss on September 15, 2014.

At the September 15, 2014 hearing, Kama orally moved to stay these proceedings. The Court directed Kama to file a written motion to stay the proceedings. On September 22, 2014, Kama filed a Motion to Stay Proceedings Pending Appeal of Related Cases. (Doc. No. 24.) On September 26, 2014, Third-Party Defendants filed an opposition to Kama's Motion. (Doc. No. 27.)

**STANDARD**

I.      **Motion to Stay**

A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936); see also Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an

incident to its power to control its own docket.")

The inherent power to stay includes granting an order to stay "pending resolution of independent proceedings which bear upon the case." Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863 (9th Cir. 1979). Where a stay is sought pending the resolution of another action, the court need not find that two cases possess identical issues; a finding that the issues are substantially similar is sufficient to support a stay. See Landis, 299 U.S. at 254. Courts should weigh the competing interests of the parties. See id. at 254-55. The issues involved in the pending proceedings need not be "controlling of the action before the court" for a stay to be ordered. See Leyva, 593 F.2d at 864.

In determining the propriety of a stay, courts consider the possible effects of judicial economy as well as the potential harm to the parties and the public interest. See Dependable Highway Express v. Navigators Ins. Co., 498 F.3d 1059, 1066-67 (9th Cir. 2007).

The party seeking to stay the proceedings carries "the burden of establishing its need." Clinton, 520 U.S. at 708 (citing Landis, 299 U.S. at 255).

**II.      Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state

a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. <u>Sateriale v. R.J. Reynolds Tobacco Co.</u>, 697 F.3d 777, 783 (9th Cir. 2012). The complaint must contain sufficient factual matter accepted as true to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556-57). However, in considering a motion to dismiss, "the court is not deciding whether a claimant will ultimately prevail but rather whether the

claimant is entitled to offer evidence to support the claims asserted." <u>Tedder v. Deutsche Bank Nat. Trust Co.</u>, 863 F. Supp. 2d 1020, 1030 (D. Haw. 2012) (citing <u>Twombly</u>, 550 U.S. at 563 n. 8).

Should a claim be dismissed, the court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1079 (9th Cir. 2012).

## III.    Applicability of Rule 9(b)

Rule 9(b) imposes a heightened pleading standard on a party alleging fraud and requires the party to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the 'who, what, when, where and how' of the misconduct charged." <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).

This district court has previously held that "where a Chapter 480 claim is based on fraudulent acts, a plaintiff must plead with particularity." <u>Long v. Deutsche Bank Nat. Trust Co.</u>, Civ. No. 10-00359 JMS/KSC, 2011 WL 2650219, at *7 (D. Haw. July 5, 2011); <u>see also</u> <u>Smallwood v. NCsoft Corp.</u>, 730 F.Supp.2d 1213, 1232-33 (D. Haw. 2010) (finding that plaintiff's H.R.S. § 480-2 claim based on "fraudulent concealment" was subject to Rule 9(b)'s particularity requirement). Here, some of Kama's

allegations in support of his H.R.S. § 480-2 unfair and deceptive practices claim (Fourth Cause of Action) sound in fraud: Kama alleges, inter alia, that BANA "provided false and misleading statements concerning its alleged ownership of the loan and the loss mitigation process, and failed to properly process [his] documents and disclose facts relating to" his HAMP application. (Third-Party Compl. ¶ 95.) Accordingly, these allegations are subject to Rule 9(b)'s heightened pleading standard.

### DISCUSSION

**I.      Motion to Stay Proceedings**

Kama moves to stay proceedings in this case pending the outcome of the following cases currently on appeal in the Ninth Circuit:

- Bald v. Wells Fargo Bank, Civ. No. 13-00135 SOM-KSC (Ninth Circuit Case No. 13-16622)

- Gibo v. U.S. Bank N.A., Civ. No. 12-00514 SOM-RLP (Ninth Circuit Case No. 13-16092)

- Lima v. Deutsche Bank National Trust Company, Civ. No. 12-00509 SOM-RLP (Ninth Circuit Case No. 13-16091)

- Lowther v. U.S. Bank N.A., Civ. No. 13-00235 LEK-BMK (Ninth Circuit Case No. 14-16345)

- Lizza v. Deutsche Bank National Trust Company, Civ. No. 13-00190 HG-BMK (Ninth Circuit Case No.

14-16483)

- <u>Sigwart v. U.S. Bank N.A.</u>, Civ. No. 13-00529 LEK-RLP (Ninth Circuit Case No. 14-16346)

(Mot. to Stay at 5.)[9]

In <u>Bald</u>, <u>Gibo</u>, and <u>Lima</u>, the plaintiffs alleged wrongdoing by defendants Wells Fargo Bank, Deutsche Bank and U.S. Bank (collectively, the "Banks") in connection with the Banks' nonjudicial foreclosure sales of the subject properties. <u>Bald v. Wells Fargo Bank</u>, Civ. No. 13-00135 SOM-KSC, 2013 WL 3864449 (D. Haw. July 25, 2013); <u>Lima v. Deutsche Bank Trust Co.</u>, 943 F.Supp.2d 1093 (D. Haw. 2013), <u>as amended</u> (May 6, 2013) (dismissing both <u>Gibo v. U.S. Bank N.A.</u>, Civ. No. 12-00514 SOM-RLP and <u>Lima et al. v. Deutsche Bank National Trust Company</u>, Civ. No. 12-00509 SOM-RLP). Specifically, the plaintiffs asserted that the Banks advertised that they were selling the subject properties via quitclaim deed, rather than by warranty deed, which brought a lower price, thereby allegedly breaching a duty to the plaintiffs to get the best possible price for the subject

---

[9]Kama also appears to argue that the Court should stay proceedings in this case pending the result of two Hawaii state court cases: (1) <u>Ilar v. Lava Rock Properties LLC</u>, Civ. No. 11-1-003091 (pending in the Circuit Court of the First Circuit, State of Hawaii) and (2) <u>Sigwart v. Rosen</u>, Civ. No. 13-1-002097 (on appeal to the Hawaii Intermediate Court of Appeals). (Mot. to Stay at 6.) However, Kama has not pointed out any claims or issues in <u>Lava Rock</u> and <u>Rosen</u> that are similar to those in the present case. Accordingly, the Court declines to grant Kama's Motion to Stay based on these two state court cases.

properties. E.g., Bald, 2013 WL 3864449, at *3. The plaintiffs further asserted that the Banks violated H.R.S. § 667-5 by failing to publish notices of the postponements of the foreclosure auctions. Id. The Bald, Gibo, and Lima plaintiffs argued that the Banks' alleged failures on these fronts constituted both a violation of H.R.S. § 667-5, as well as a violation of H.R.S. § 480-2, which prohibits unfair and deceptive acts and practices. Id.

In her orders granting the Banks' respective motions to dismiss, Judge Mollway ruled that Hawaii's nonjudicial foreclosure law does not require a nonjudicial foreclosure sale to result in a conveyance by more than a quitclaim deed, or prohibit "advertisements stating that only quitclaim deeds will be provided." Id. at *4. Judge Mollway further ruled that Hawaii's nonjudicial foreclosure law does not require "that notice of the postponement of a nonjudicial foreclosure be published in a newspaper." Id. at *6. Finally, Judge Mollway found that the Bald, Gibo, and Lima plaintiffs did not state a violation of H.R.S. § 480-2 because their "allegations regarding advertisement of or conveyance by quitclaim deed, as well as their allegations regarding the postponement of foreclosures sales, fail[ed] to assert actionable misconduct by" the Banks. Id.

On appeal, the Bald, Gibo, and Lima plaintiffs frame

the issues as whether the district court erred in dismissing claims brought under H.R.S. § 480-2 where the plaintiffs allege that the Banks committed unfair and deceptive acts and practices by (1) offering the subject properties by "quitclaim deed only" and (2) selling the subject properties without publishing the continued foreclosure sale date.[10/] See Briefs of Plaintiffs-Appellants in <u>Bald et al. v. Wells Fargo Bank, N.A., et al.</u>, No. 13-16622 (9th Cir. December 18, 2013); <u>Gibo v. U.S. Bank et al.</u>, No. 13-16092 (9th Cir. Oct. 4, 2013); <u>and Lima et al. v. Deutsche Bank National Trust Company et al.</u>, No. 13-16091 (9th Cir. Oct. 4, 2013).

The Ninth Circuit's rulings in <u>Bald</u>, <u>Gibo</u>, and <u>Lima</u> will not affect the claims contained in Kama's Third-Party Complaint. Unlike the plaintiffs in <u>Bald</u>, <u>Gibo</u>, and <u>Lima</u>, Kama does not allege that BANA breached a duty to obtain the best possible price for the Property by advertising that the Property would be sold by "quitclaim deed only." Further, Kama does not

---

[10/]In <u>In re Kekauoha-Alisa</u>, No. 05-01215, 2007 WL 1752266, at *4 (Bankr. D. Haw. June 15, 2007), Judge Faris of the U.S. Bankruptcy Court for the District of Hawaii interpreted H.R.S. § 667 as only requiring oral announcement of a postponed foreclosure sale date. Judge Faris's June 15, 2007 order was not appealed to the Ninth Circuit. In <u>In re Kekauoha-Alisa</u>, 674 F.3d 1083 (9th Cir. 2012), which was an appeal of another order in the same bankruptcy case, the Ninth Circuit held that a lender violated H.R.S. § 667 by failing to make public announcement of the postponed foreclosure sale date. <u>Id.</u> at 1088. The Ninth Circuit also held that this defect was a deceptive practice under H.R.S. § 480-2. <u>Id.</u> at 1091.

appear to allege that BANA violated H.R.S. § 667 by failing to publish the continued foreclosure sale date of the Property.[11] Rather, Kama asserts that BANA violated § 667 by not publicly _announcing_ the postponed foreclosure sale date. (Third-Party Compl. ¶ 75.)[12] Moreover, and importantly, Kama's H.R.S. § 480-2 claims are not premised on the allegations at issue in _Bald_, _Gibo_, and _Lima_. Instead, Kama's § 480-2 claims are based on BANA allegedly providing false and misleading statements, and failing to disclose facts, concerning the loan modification process. (_Id._ ¶¶ 95-96.) Accordingly, the Court concludes that it is inappropriate to stay proceedings in this case pending the Ninth Circuit's rulings in _Bald_, _Gibo_, and _Lima_.[13]

---

[11]Paragraph 57 of the Third-Party Complaint provides: "The non-judicial foreclosure auction allegedly held on April 11, 2011[,] was defective in several respects including but not limited to the failure of [BANA] to publish the continued sale date and time." (Third-Party Compl. ¶ 57.) However, Kama's Second Cause of Action alleges a violation of H.R.S. Chapter 667 for "Failure to [P]rovide Public Announcement of Continued [Foreclosure Sale] Date." (_Id._ at 25.) The Court construes the Third-Party Complaint as containing the latter, but not the former, claim. In any event, H.R.S. § 667-5 only requires public announcement of a postponement and not publishing in a newspaper.

[12]Kama's Third-Party Complaint also alleges that BANA did not own the Note or Mortgage at the time of foreclosure and thus lacked standing to conduct the non-judicial foreclosure sale of the Property. (Third-Party Compl. ¶ 71.) Kama alleges that, as a result, BANA violated H.R.S. § 667-5 by foreclosing on the Property. (_Id._ ¶ 67.) Such claims are not present in _Bald_, _Gibo_, and _Lima_.

[13]The Court notes that Judge Watson stayed proceedings in three cases before him "in light of the similar legal issues
(continued...)

18

Regarding <u>Lowther</u>, <u>Lizza</u>, and <u>Sigwart</u>, the Ninth

Circuit's rulings in these cases likewise will not affect Kama's

claims in his Third-Party Complaint. The claims made by the

plaintiffs in <u>Lowther</u>, <u>Lizza</u>, and <u>Sigwart</u> are different than

those made by Kama in the instant action. <u>See</u> <u>Lowther v. U.S.</u>

<u>Bank, N.A.</u>, Civ. No. 13-00235 LEK-BMK, 2014 WL 2452598 (D. Haw.

May 30, 2014) (dismissing first amended complaint in its

entirety); <u>Lizza v. Deutsche Bank Nat. Trust Co.</u>, Civ. No. 13-

00190 HG-BMK, 2014 WL 3101322 (D. Haw. July 3, 2014) (striking

second amended complaint and dismissing the case with prejudice);

<u>and Sigwart v. U.S. Bank N.A.</u>, Civ. No. 13-00529 LEK-RLP, 2014 WL

---

<u>13</u>/(...continued)
raised in" <u>Bald</u>, <u>Gibo</u>, and <u>Lima</u>. <u>E.g.</u>, <u>Degamo v. Bank of America,</u>
<u>N.A.</u>, Civ. No. 13-00141, DKW-BMK (Doc. No. 51) (minute order
staying <u>Degamo</u>). These three cases are as follows: <u>Ilar v. Routh</u>
<u>Crabtree</u>, Civ. No. 13-00145 DKW-BMK; <u>Degamo v. Bank of America,</u>
<u>N.A.</u>, Civ. No. 13-00141, DKW-BMK; and <u>Fergerstrom v. PNC Bank,</u>
<u>N.A.</u>, Civ. No. 13-00526 DKW-RLP. Unlike the instant case, the
plaintiffs in <u>Ilar</u>, <u>Degamo</u>, and <u>Fergerstrom</u> made similar
allegations as the plaintiffs in <u>Bald</u>, <u>Gibo</u>, and <u>Lima</u>. For
instance, in <u>Routh Crabtree</u>, the plaintiffs asserted that the
defendants violated H.R.S. § 480-2 by falsely advertising the
subject properties "for sale without covenants or warranties as
to title, and, on many occasions, as sales by mortgagee's
quitclaim conveyances," and failing to publish notices of the
postponed foreclosure auctions' dates and times. <u>See</u> First
Amended Complaint ¶¶ 185 & 188 in <u>Routh Crabtree</u>, Civ. No. 13-
00145 (Doc. No. 10).

Kama argues that the Court should stay proceedings in this
case because he is a putative class member in <u>Ilar</u>, <u>Degamo</u>, and
<u>Fergerstrom</u>. (Mot. to Stay at 11.) As noted, Judge Watson has
stayed and administratively closed these three cases due to the
<u>Bald</u>, <u>Gibo</u>, and <u>Lima</u> appeals. However, Kama does not explain how
he is a putative class member of these cases or in any event how
that might be relevant to the subject case.

1322813 (D. Haw. Mar. 31, 2014) (dismissing complaint in its
entirety with partial leave to amend). Indeed, several of the
claims alleged by the plaintiffs in <u>Lowther</u>, <u>Lizza</u>, and <u>Sigwart</u>
are similar to those alleged by the plaintiffs in <u>Bald</u>, <u>Gibo</u>, and
<u>Lima</u>. For example, in <u>Lizza</u> and <u>Sigwart</u>, the plaintiffs asserted
that the defendant banks were required to sell the subject
properties on the "best reasonable terms" and violated that
obligation by advertising that the subject properties would be
sold by quitclaim deed only. <u>E.g.</u>, <u>Lizza</u>, 2014 WL 3101322, at *3.
And, in <u>Sigwart</u>, the plaintiff asserted that defendant U.S. Bank
violated H.R.S. § 480-2 by failing to publish notice of a new
sale date when U.S. Bank moved the foreclosure auction date back.
<u>Sigwart</u>, 2014 WL 1322813, at *2. As discussed above, Kama does
not assert any such claims in his Third-Party Complaint.
Furthermore, and importantly, at the time of the issuance of this
Order, the plaintiffs in <u>Lowther</u>, <u>Lizza</u>, and <u>Sigwart</u> have not
filed their opening briefs with the Ninth Circuit and, therefore,
this Court is unable to determine what issues will be presented
on appeal.

For the foregoing reasons, the Court denies Kama's
Motion to Stay Proceedings Pending Appeal of Related Cases.
Having determined that a stay is inappropriate in this case, the
Court now turns to Third-Party Defendants' Motion to Dismiss.

**II.      Motion to Dismiss**

The Third-Party Complaint contains the following causes of action: (1) Violation of H.R.S. Chapter 667[14/] ("Lack of Legal Right to Foreclose") (against all Third-Party Defendants); (2) Violation of H.R.S. Chapter 667 ("Failure to Provide Public Announcement of Continued [Foreclosure Sale] Date and to Follow Initial Terms of Sale") (against BANA and FHLMC Trust only); (3) Breach of Contract ("Third-Party Beneficiary of HAMP Contract Between [BANA] and Freddie Mac and the U.S. Treasury") (against BANA and FHLMC Trust only); (4) Violation of H.R.S. § 480-2 (against all Third-Party Defendants); (5) Wrongful Foreclosure (against BANA and FHLMC Trust only); (6) Promissory Estoppel (against BANA only); (7) Violation of Fifth Amendment Due Process Clause (against Freddie Mac and FHLMC Trust only); and (8) Quiet

---

[14/]H.R.S. Chapter 667 sets forth the procedures governing non-judicial foreclosures in the State of Hawaii. H.R.S. Chapter 667 was substantially amended on May 5, 2011, and again on June 18, 2012. See 2011 Haw. Sess. Laws Act 48 (approved May 5, 2011) and 2012 Haw. Sess. Laws Act 182 (approved June 18, 2012); see also Everett Kaneshige and Seth Corpuz-Lahne, The New Foreclosure Law, Haw. B.J., October 2012 (examining the content and history of these measures). These amendments do not apply to foreclosures that took place prior to their approval. See § 45 of Act 48 and § 69 of Act 182 (stating that "[t]his Act shall take effect upon its approval"); see also Taniguchi v. Ass'n of Apartment Owners of Kind Manor, Inc., 114 Haw. 37, 48 (Haw. 2007) (holding that all statutes are to be prospectively construed unless the legislature "expressly declared or . . . necessarily implied" its intention or purpose for retrospective application in the language of the statute). Because the foreclosure of the Property occurred on April 11, 2011, these amendments do not apply to the foreclosure procedures used in this case. Accordingly, all citations to H.R.S. Chapter 667 in this Order are to the 2008 version.

Title (against "Defendants Claiming Any Interest in the Subject Property").

The Court will address whether each cause of action states a claim upon which relief can be granted.

## A. First Cause of Action: Violation of H.R.S. Chapter 667 Regarding the Alleged Lack of Authority to Foreclose

In the First Cause of Action, Kama alleges that BANA did not own the Note or Mortgage at the time of foreclosure and, therefore, was not authorized to conduct the non-judicial foreclosure sale of the Property on April 11, 2011. (Third-Party Compl. ¶ 71.) Kama alleges that BANA therefore violated H.R.S. § 667-5 by foreclosing on the Property. (Id. ¶ 67.) That statute provides, in relevant part, that "the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises" may foreclose where the mortgage contains a power of sale. H.R.S. § 667-5(a).

As noted above, on September 22, 2010, MERS, as nominee for Finance Factors, assigned all right, title and interest under the Mortgage to BANA. (Mot. to Dismiss Ex. C.) The Mortgage specifically states that MERS is the mortgagee and has authority to act on behalf of Finance Factors. (Id. Ex. B at 1.) Further, the Mortgage expressly grants to MERS "and to the successors and assigns of MERS" the power of sale. (Id. at 2.) Kama does not contest the validity of the Assignment.

22

Accordingly, BANA did not violate H.R.S. § 667-5(a) because, as mortgagee, it had the authority to foreclose on the Property, pursuant to the power of sale clause contained in the Mortgage.

Moreover, to the extent Kama argues that BANA was not authorized to pursue a non-judicial foreclosure on the Property because BANA did not own or hold the original Note or Mortgage at the time of foreclosure,[15/] such an argument is unavailing. This district court has consistently rejected claims that a mortgagee is required to prove that it possesses or owns the original Note or Mortgage in order to lawfully foreclose under H.R.S. § 667-5. See, e.g., Krakauer v. Indymac Mortg. Servs., Civ. No. 09-00518 ACK-BMK, 2010 WL 5174380, at *9 (D. Haw. Dec. 14, 2010) (rejecting plaintiffs' contentions that defendants lacked standing to institute a non-judicial foreclosure sale because defendants did not possess the original note and mortgage); Pascual v. Aurora Loan Servs., LLC, Civ. No. 10-00759 JMS-KSC, 2012 WL 3583530, at *3 (D. Haw. Aug. 20, 2012) ("According to its plain language, H.R.S. § 667-5 contains no requirement that a mortgagee affirmatively prove that it holds

---

[15/]In his Opposition, Kama argues that his First Cause Action is not based on the "holder of the note" theory. (Opp'n at 15.) At the same time, however, Kama asserts that Third-Party Defendants "have failed to show who actually owned the debt foreclosed on at the time of [the] foreclosure of the Subject Property." (Id. at 16.) In an abundance of caution, the Court will therefore address whether BANA had authority to foreclose on the Property even though it allegedly did not own or hold the original Note or Mortgage.

the note. Indeed, Plaintiffs do not cite and the court is not aware of any authority under Hawaii law affirmatively stating that a mortgagee's power of sale under Hawaii's non-judicial foreclosure statute is tied to the presentment of the underlying note.") (emphasis in original); Brenner v. Indymac Bank, F.S.B., Civ. No. 10-00113 SOM/BMK, 2010 WL 4666043, at * 7 (D. Haw. Nov. 9, 2010) (finding that "[n]o law requires a lender to show a borrower an 'original' mortgage" prior to initiating foreclosure); Del Piano v. Mortgage Elec. Registration Systems, Inc., Civ. No. 11-00140 SOM/BMK, 2012 WL 621975, at * 10 (D. Haw. Feb. 24, 2012) ("[Plaintiff] cites no provision requiring the lender to show her the original Note.").

Because BANA was not required to possess the original Note or Mortgage prior to conducting the non-judicial foreclosure of the Property, and because the chain of title indicates that BANA as mortgagee was authorized under H.R.S. § 667-5 to institute the non-judicial foreclosure, Kama's First Cause of Action fails to state a claim for which relief may be granted.

> **B. Second Cause of Action: Violation of H.R.S. Chapter 667 Regarding the Alleged Failure to Provide Public Announcement of the Continued Foreclosure Sale Date and to Follow the Initial Terms of Sale**

In the Second Cause of Action, Kama alleges an additional violation of H.R.S. § 667-5. That statute provides in

pertinent part:

> (d) Any sale, of which notice has been given pursuant to subsections (a) and (b) may be postponed from time to time by public announcement made by the mortgagee or by a person acting on the mortgagee's behalf.

H.R.S. § 667-5(d). Kama specifically alleges that BANA postponed the Property's foreclosure sale date, but failed to publicly announce the continued sale date, in violation of H.R.S. § 667-5(d). (Third-Party Compl. ¶ 75.)[16]

Kama's allegations are belied by the Mortgagee's Affidavit of Foreclosure Under Power of Sale. (Mot. to Dismiss Ex. E.) That recorded document states that:

> (d) Upon the scheduled date, time and place, caused said sale to be postponed to 04/11/11. Each postponement was publicly announced by crying out the postponement date at the time and place of the scheduled auction.

(Id.)

Under Hawaii law, the recorded Mortgagee's Affidavit of Foreclosure Under Power of Sale may be admitted as evidence that the sale was conducted in conformity with H.R.S. Chapter 667. Specifically, pursuant to H.R.S. § 667-8,

---

[16]The Court notes that Section 22 of the Mortgage provides that "[i]f Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in Section 15." (Mot. to Dismiss Ex. B at 10.) Section 15, in turn, provides that ". . . [i]f any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument." (Id. at 8.) In this case, the "Applicable Law" is H.R.S. § 667-5.

> [i]f it appears by the affidavit that the
> affiant has in all respects complied with the
> requirements of the power of sale and the
> statute, in relation to all things to be done
> by the affiant before selling the property,
> and has sold the same in the manner required
> by the power, the affidavit, or a duly
> certified copy of the record thereof, shall
> be admitted as evidence that the power of
> sale was duly executed.

See <u>U.S. Bank Nat. Ass'n v. Castro</u>, 131 Haw. 28, 40 (Haw. 2013) ("That the affidavit shall be admitted as evidence that the power of sale was duly executed demonstrates the legislature's <u>intent to promote the finality of properly conducted sales</u>.")(emphasis in original); <u>see</u> <u>also</u> Fed. R. Evid. 902(4) (providing that certified copies of public records are self-authenticating and require no extrinsic evidence of authenticity in order to be admitted).

Here, the Mortgagee's Affidavit of Foreclosure Under Power of Sale, recorded on April 11, 2011, indicates that the power of sale was duly executed and that H.R.S. § 667-5(d)'s notice requirement was satisfied. The Court must therefore conclude that the foreclosure sale was conducted in conformity with Hawaii law. Accordingly, Kama's claim that BANA did not publicly announce the continued foreclosure sale date of the Property is dismissed without prejudice.

In addition, the Court notes that Kama alleges in the Second Cause of Action that "[t]he bid by Freddie Mac was [] in violation of the terms of sale initially announced." (Third-Party

26

Compl. ¶ 78.) The Court finds that this claim is vague and conclusory, and contains insufficient factual detail to meet Rule 8's pleading standard. Accordingly, Kama's claim that Freddie Mac's bid violated the initial terms of sale is dismissed without prejudice.

**C. Third Cause of Action: Breach of Contract**

Kama alleges in the Third Cause of Action that BANA failed to abide by HAMP guidelines and "breached its duty to [] Kama as the intended third party beneficiary of its agreement with Freddie Mac and the U.S. Treasury under HAMP[.]" (Third-Party Compl. ¶ 91.)

In <u>Newell v. Wells Fargo Bank, N.A.</u>, the court explained that

> HAMP is a loan modification program designed to reduce delinquent and at-risk borrowers' monthly mortgage payments. HAMP was authorized by Congress as part of the Emergency Economic Stabilization Act of 2008, which has the stated purpose of giving the Secretary of Treasury the 'authority and facilities' necessary to 'restore liquidity and stability to the financial system of the United States.' 12 U.S.C. [§] 5201(1).

> Under the terms of the HAMP agreement and Treasury regulations, [a lender] is required to evaluate borrowers for loan modifications within thirty days, grant loan modifications to qualified borrowers, forebear from foreclosure during the time that an application for a loan modification is pending, and advise loan modification applicants of the prohibition on foreclosure sales (<u>see</u> Dkt. No. 11 (Treasury Department's Supplemental Directive 10-02)).

27

No. C 10-05138 WHA, 2012 WL 27783, at *5 (N.D. Cal. Jan. 5, 2012). HAMP guidelines also require a lender to notify a borrower that his HAMP loan modification request has been denied and allow the borrower thirty days to respond to the "non-approval notice" before a foreclosure sale may take place. (Opp'n Ex. G ("U.S. Dep't of Treasury, HAMP Supplemental Directive 10-02").)[17/]

In this case, the Court concludes that Kama lacks standing to enforce the HAMP guidelines. This district court and

---

[17/]Kama attaches several exhibits to his Opposition to the instant Motion to Dismiss and requests that the Court take judicial notice of these exhibits. (Opp'n at 5.) Because these exhibits are matters of public record, and because Third-Party Defendants do not object to Kama's request, the Court considers the exhibits attached to Kama's Opposition to the instant Motion to Dismiss. See U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (finding that courts may consider "matters of judicial notice" without converting a 12(b)(6) motion to dismiss into a motion for summary judgment); and Intri-Plex Technology, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.") (internal quotation marks and citation omitted).

Further, the Court notes that Kama attempts to incorporate by reference exhibits attached to his Memorandum in Opposition to Freddie Mac's Motion for Summary Judgment on the Ejectment Complaint, which, as noted, was filed in state circuit court on November 25, 2013. This Court has recently held that the Federal Rules of Civil Procedure do not authorize a party to incorporate by reference exhibits attached to prior briefing. See Barnes v. Sea Hawaii Rafting, Civ. No. 13-00002 ACK-RLP, Doc. No. 120, at 11 n. 9 (D. Haw. September 2, 2014) (finding no authority under the Federal Rules of Civil Procedure for plaintiff's attempt to incorporate by reference exhibits attached to three prior motions). Nevertheless, the Court will consider these exhibits since Third-Party Defendants expressed no opposition, and the Court finds no prejudice to Third-Party Defendants.

numerous other district courts within the Ninth Circuit have made clear that there is no express or implied private right of action to sue lenders or service providers for HAMP violations. See, e.g., Northern Trust, NA v. Wolfe, Civ. No. 11-00531 LEK-BMK, 2012 WL 1983339, at *20 (D. Haw. May 31, 2013) ("Although Wolfe contends that Northern Trust had a duty under HAMP not to proceed with foreclosure while evaluating him for loan modification, there is no express or implied private right of action for a violation of HAMP."); Soriano v. Wells Fargo Bank, N.A., Civ. No. 11-00044 SOM/KSC, 2013 WL 310377, at *9 (D. Haw. Jan. 25, 2013) ("This court is not persuaded that there is a private right of action for a violation of HAMP Guidelines."); Ingalsbe v. Bank of Am., N.A., 2010 WL 5279839, at *5 (E.D. Cal. Dec. 13, 2010) ("The consensus among district courts in the Ninth Circuit is that there is no private right of action under HAMP.").

Moreover, Kama is not an intended third-party beneficiary of any HAMP agreement between Third-Party Defendants and the U.S. Treasury. "Before a third party can recover under a contract, it must show that the contract was made for its direct benefit – that it is an intended beneficiary of the contract." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 2000). The vast majority of district courts in this circuit have determined that mortgage loan borrowers are not intended third-party beneficiaries of HAMP agreements. See, e.g.,

Escobedo v. Countrywide Home Loans, Inc., No. 09cv1557 BTM(BLM),
2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) (concluding that
qualified borrowers were incidental beneficiaries of Service
Provider Agreement ("SPA") between Countrywide Home Loans and
Fannie Mae and did not have enforceable rights under the
contract); Morales v. Chase Home Finance LLC, No. C10-02068 JSW,
2011 WL 1670045, at *9 (N.D. Cal. Apr. 11, 2011) ("As many
district courts in the Ninth Circuit have determined, individual
borrowers do not have standing to sue under the SPA because they
are not intended third party beneficiaries of the SPA."); Hoffman
v. Bank of America, N.A., No. C 10-2171 SI, 2010 WL 2635773, at
*4 (N.D. Cal. June 30, 2010) (finding that individual borrower
was "an incidental and not an intended beneficiary to the HAMP
servicer's agreement").

In Kilaita v. Wells Fargo Home Mortg., the court
explained the reasoning behind many of these district court
decisions:

> HAMP sets forth guidelines that loan
> servicers should consider in reviewing a
> modification request, and does not require
> that loan servicers agree to modify anything.
> See Escobedo v. Countrywide Home Loans, Inc.,
> 09CV1557 BTM(BLM), 2009 WL 4981618, at *2-*3
> (S.D. Cal. Dec. 15, 2009). The nature of HAMP
> does not provide Plaintiffs with a private
> right of action. Parties benefitting from a
> government contract "are generally assumed to
> be incidental beneficiaries, and may not
> enforce the contract absent a clear intent to
> the contrary." Zendejas v. GMAC Whole Sale
> Mortg. Corp., 1:10-CV00184, 2010 WL 2629899,

> *3 (E.D. Cal. June 29, 2010) (citing
> <u>Escobedo</u>, 2009 WL 4981618, at *1-*2).
> Qualified borrowers under HAMP "'would not be
> reasonable in relying on the Agreement as
> manifesting an intention to confer a right on
> him because the agreement does not require [a
> loan servicer to] modify eligible loans.'"
> <u>Id.</u> (quoting <u>Escobedo</u>, 2009 WL 49181618, at
> *3). Thus, Plaintiffs lack standing to
> challenge HAMP compliance.

No. CV 11-00079 EJD, 2011 WL 6153148, at *9 (N.D. Cal. Dec. 12,
2011).

Notwithstanding the above-mentioned decisions, Kama
argues in his Opposition that "[i]t is widely accepted that
United States [h]omeowners are the intended beneficiaries of
HAMP." (Opp'n at 20.) In support, Kama relies solely on two
decisions issued by the United States District Court for the
Southern District of California in the same action: <u>Marques v.
Well Fargo Mortgage, Inc.</u>, Civ. No. 09-cv-1985-L(RBB), 2010 WL
3212131 (S.D. Cal. Aug. 12, 2010) ("<u>Marques</u> I") and <u>Marques v.
Well Fargo Mortgage, Inc.</u>, Civ. No. 09-cv-1985-L(RBB), 2011 WL
2005837 (S.D. Cal. May 23, 2011) ("<u>Marques</u> II").

In <u>Marques</u> I, the court held that the plaintiff-
borrower "may be able to state a claim" against defendant Wells
Fargo as an intended beneficiary of the HAMP agreement between
Wells Fargo and Fannie Mae. <u>Marques</u> I, at *7. However, this
holding was mere dicta because the Court subsequently found that
the plaintiff-borrower alleged insufficient facts to state a
claim for breach of the HAMP agreement and, therefore, dismissed

31

the plaintiff-borrower's complaint with leave to amend.

Id. (finding, inter alia, that plaintiff-borrower "did not allege whether he contacted [Wells Fargo] in reference to the modification"). In Marques II, the court concluded that the plaintiff-borrower's amended complaint cured the defects noted in the court's prior order and thus allowed him to proceed on the theory that he was an intended third-party beneficiary of the HAMP agreement. Marques II, at *3.

This Court declines to follow Marques I and Marques II. As discussed above, the weight of authority indicates that individual mortgage loan borrowers are not intended third-party beneficiaries of HAMP agreements. Further, and importantly, as noted by Third-Party Defendants, the case on which the Marques court relied extensively on, County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237 (9th Cir. 2009), was reversed by the United States Supreme Court. See Astra USA, Inc. v. Santa Clara County, Cal, 131 S. Ct. 1342 (2011). As one federal district court explained, the Astra decision supports the conclusion that an individual homeowner is not entitled to enforce a HAMP agreement under a third-party beneficiary theory:

> Astra involved a third-party beneficiary
> theory brought by health care facilities that
> had been over-charged by pharmaceutical
> companies in violation of the Pharmaceutical
> Pricing Agreement ("PPA"), which the
> pharmaceutical companies had entered into
> with the United States Department of Health
> and Human Services. The PPA was created

pursuant to the Public Health Services Act ("PHSA"), 42 U.S.C. § 256b. In passing PHSA, Congress provided no private right of action to enforce its provisions. Upon reviewing these facts, the Supreme Court held that allowing health care facilities to sue as third party beneficiaries to the PPA was "incompatible with the statutory regime." The Court reasoned since the PPA agreements serve as the mechanism by which pharmaceutical companies opt-in to PHSA's statutory scheme, a third-party private action would amount to direct enforcement of the PHSA.

Likewise, Defendant - and other banks - opt-in to the [Troubled Asset Relief Program] and HAMP statutory scheme by signing the SPA with the United States Treasury. Allowing the Plaintiffs to enforce the SPA under a third-party beneficiary theory would open a "backdoor" to a private right of action to enforce HAMP, in contravention of Congress' wishes. As the Supreme Court held in <u>Astra</u>, this kind of third-party beneficiary theory is "incompatible with the statutory regime."

<u>Turbeville v. JP Morgan Chase Bank</u>, No. SA CV 10-01464 DOC(JCGx), 2011 WL 7163111, at *7-*8 (C.D. Cal. Apr. 4, 2011).

Thus, because Kama is not a third-party beneficiary of any HAMP agreement, and because he has no private cause of action for the alleged HAMP violations, his breach of contract claim based upon HAMP must fail. Therefore, the Third Cause of Action is dismissed without prejudice.

### D. Fourth Cause of Action: Violation of H.R.S. § 480-2

In the Fourth Cause of Action, Kama alleges that

[BANA], on behalf of Freddie Mac and its mortgage trust [FHLMC Trust], failed to provide [Kama] with the opportunity to

33

> process a loan mitigation application of his
> loan before proceeding with the non-judicial
> foreclosure sale. [BANA] provided false and
> misleading statements concerning its alleged
> ownership of the loan and the loss mitigation
> process and failed to properly process
> [Kama's] documents and disclose facts
> relating to [Kama's] HAMP application for
> modification of his mortgage loan.

(Id. ¶ 95.) Kama further alleges that BANA was required under

HAMP guidelines "to offer good faith loss mitigation of [] Kama's

loan, but [BANA] failed to disclose this fact to [] Kama." (Id. ¶

96.)

H.R.S. § 480-2(a) provides: "Unfair methods of

competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce are unlawful." The wording of

H.R.S. § 480-2(a) "indicates that its prohibition is directed at

two separate types of activity: unfair methods of competition and

unfair or deceptive acts or practices." Dash v. Wayne, 700 F.

Supp. 1056, 1058 (D. Haw. 1988) (emphasis in original). Here,

Kama only alleges a violation of the latter clause of the

statute. Accordingly, the Court will only address whether Kama

sufficiently alleged that BANA engaged in "unfair or deceptive

acts or practices."

The Hawaii Supreme Court "has described a deceptive act

or practice as having the capacity or tendency to mislead or

deceive." Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 261 (Haw.

2006) (internal quotation marks and citation omitted). Under the

34

three-part test adopted by the Hawaii Supreme Court in <u>Courbat</u>, a
deceptive act or practice is "(1) a representation, omission, or
practice that (2) is likely to mislead consumers acting
reasonably under the circumstances where (3) the representation,
omission or practice is material." <u>Id.</u> at 262 (internal quotation
marks and alteration signals omitted). "A representation,
omission, or practice is considered 'material' if it involves
'information that is important to consumers and, hence, likely to
affect their choice of, or conduct regarding, a product.'" <u>Id.</u>
(quoting <u>Novartis Corp. v. FTC</u>, 223 F.3d 783, 786 (D.C. Cir.
2000)).

H.R.S. § 480-13(b) states, in relevant part, that
"[a]ny consumer who is injured by any unfair or deceptive act or
practice" that violates § 480-2 "[m]ay sue for damages sustained
by the consumer." H.R.S. § 480-13(b)(1). "To obtain relief under
section 480-13(b)(1), a consumer must establish three elements:
'(1) a violation of [section] 480-2; (2) injury to the consumer
caused by such a violation; and (3) proof of the amount of
damages.'" <u>Compton v. Countrywide Financial Corp.</u>, No. 11-17158,
2014 WL 3805529, at *3 (9th Cir. Aug. 4, 2014) (quoting <u>Davis v.
Wholesale Motors, Inc.</u>, 86 Haw. 405, 417 (Haw. Ct. App. 1997)).

In this case, "it is undisputed that [Kama] qualifies
as a 'consumer,' and that [BANA's] lending and loan modification
activities involve the 'conduct of any trade and commerce.'" <u>Id.</u>

35

at *6 (citing <u>Hawaii Cmty. Fed. Credit Union v. Keka</u>, 94 Haw. 213, 227 (Haw. 2000)).

Further, for purposes of the instant Motion to Dismiss, the Court finds that Kama has adequately alleged that BANA engaged in "unfair or deceptive acts or practices" in violation of H.R.S. § 480-2. The crux of Kama's H.R.S. § 480-2 claims is that BANA allegedly provided false and misleading statements, and failed to disclose facts, regarding the loan modification process. Kama alleges that, as a consequence, he was unable to obtain a loan modification before BANA foreclosed on the Property or seek other relief such as filing for bankruptcy. The Third-Party Complaint's "description of [BANA's] misleading behavior sufficiently alleges a 'representation, omission, or practice' that is likely to deceive a reasonable consumer." <u>Compton</u>, 2014 WL 3805529, at *6 (quoting <u>Courbat</u>, 111 Haw. at 262). "Moreover, [BANA's alleged] misrepresentations and misleading conduct were material, in that they involved information important to a consumer attempting to negotiate with a mortgagor to prevent foreclosure." <u>Id.</u> Thus, Kama's Third-Party Complaint sets forth allegations that satisfy the three-part test in <u>Courbat</u> for violations of H.R.S. § 480-2. <u>See Courbat</u>, 111 Haw. at 261.

Additionally, the Court finds that Kama's allegations in support of his H.R.S. § 480-2 claims satisfy Rule 9(b)'s heightened pleading standard which, as discussed hereinbefore,

apply to Chapter 480 claims that sound in fraud. <u>See</u> <u>Smallwood</u>,

730 F.Supp.2d at 1232-33. Specifically, Kama alleges that

"Bonita," a BANA representative, told him that he qualified for a

loan modification and that, as long as he abided by the terms of

BANA's paperwork, "which [were] forthcoming in the mail," the

Property would not be foreclosed upon. (Third-Party Compl. ¶ 22.)

Kama further alleges that in early April 2011 a different BANA

representative told him that his loan modification application

was complete and that no other documentation was needed. (<u>Id.</u> ¶

21.) Additionally, and importantly, Kama alleges that Bonita told

him that she mailed a loan modification agreement to him. (<u>Id.</u> ¶

77.)[18/]

Finally, the Court concludes that Kama's allegations

satisfy the "proof of the amount of damages" element in H.R.S. §

480-13(b). The Ninth Circuit has recognized that "Hawaii courts

have not set a high bar for proving [this] element[]." <u>Compton</u>,

2014 WL 3805529, at *3. In <u>Compton</u>, the court found that the

plaintiff-borrower's allegations that she incurred transaction

costs during her loan modification negotiations with the

mortgagee, such as the cost of sending and notarizing documents,

were sufficient to meet the statute's proof of damages

requirement. <u>Id.</u> at *7. Here, the alleged damages suffered by

---

[18/]The Court notes that the allegations in support of Kama's
H.R.S. § 480-2 claims and Hawaii promissory estoppel claim are
similar. <u>See</u> pages 41-44 of this Order <u>infra</u>.

Kama are substantially greater than the plaintiff-borrower in Compton, specifically, the loss of the Property and Kama's equity therein. (Third-Party Compl. ¶ 98.)

Accordingly, Kama has sufficiently alleged that BANA engaged in "unfair or deceptive acts or practices."[19/] The Court denies Third-Party Defendants' Motion to Dismiss as to the Fourth Cause of Action.[20/]

---

[19/]The Court notes that, by letter dated March 6, 2011, and addressed to both Robert and Lisa Kama, BANA requested each borrower to provide, by March 21, 2011, a signed and dated copy of IRS form 4506-T. (Ex. C attached to Kama's memorandum in opposition to Freddie Mac's Motion for Summary Judgment filed in state circuit court.) That letter stated that IRS form 4506-T was needed from each borrower as part of the HAMP eligibility review process. (Id.) Although Robert Kama submitted his IRS form 4506-T to BANA by the March 21, 2011 deadline, it appears that Lisa Kama did not submit this document to BANA. (Id. Ex. F.)

The Court further notes that at the hearing Kama's counsel stated Kama was still trying to obtain, and submit to BANA, the written agreement of his ex-wife, who is personally liable under the Note and Mortgage, to the proposed loan modification (although Kama's counsel later stated he was unsure and needed to verify). That effort by Kama appears incongruous with the alleged oral representations by a BANA representative in early April 2011 that Kama had submitted all necessary documents.

[20/]The Court observes that Third-Party Defendants do not argue in their moving papers that Kama's H.R.S. § 480-2 claims are barred by Hawaii's Statute of Frauds because they are predicated on oral statements made to Kama by BANA representatives. "[T]he Statute of Frauds is an affirmative defense, which must be particularly plead." Estate of Tahilan v. Friendly Care Home Health Services, Inc., 731 F.Supp.2d 1000, 1006 (D. Haw. 2010) (citing Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . statute of frauds[.]")). Since Freddie Mac did not plead the Statute of Frauds as an affirmative defense in its "reply" to the Third-Party Complaint,
(continued...)

**E. Fifth Cause of Action: Wrongful Foreclosure**

In the Fifth Cause of Action, Kama alleges that the Property's foreclosure "was wrongful and without right" because

> [a]t the same time that representative 'Bonita' of [BANA], was reassuring [] Kama that the scheduled foreclosure sale of his home would be postponed during [] Kama's pending HAMP loss mitigation, the attorneys for [BANA] proceeded to conduct a foreclosure sale of his home unbeknownst to him.

(Id. ¶¶ 103-04.)

"A wrongful foreclosure claim is a state law claim." Lowther v. U.S. Bank, N.A., 971 F.Supp.2d 989, 1011 (D. Haw. 2013). "There is no case law from Hawaii state courts addressing whether Hawaii recognizes this claim[.]" Id.

Although Hawaii courts have not expressly recognized a common law wrongful cause of action, this district court has concluded that

> there are circumstances where a wrongful foreclosure may exist under Hawaii law. For example, a wrongful foreclosure claim may exist where the foreclosure process failed to comply with Haw. Rev. Stat. Chapter 667 because the foreclosing party allegedly failed to provide the required notices or whether the foreclosure was allegedly invalid because the entity that purportedly assigned the foreclosing party its interest in the subject loan was dissolved prior to executing the assignment.

---

[20]/(...continued)
and since Third-Party Defendants did not raise the defense in their moving papers, the Court will not address this issue.

Id. (citing Swartz v. City Mortg., Inc., 911 F.Supp.2d 916, 947 (D. Haw. 2012); Matsumura v. Bank of Am., N.A., Civ. No. 11-00608 JMS-BMK, 2012 WL 463933, at *3 (D. Haw. Feb. 10, 2012); and Billete v. Deutsche Bank Nat. Trust Co., Civ. No. 13-00061 LEK-KSC, 2013 WL 2367834, at *7 (D. Haw. May 29, 2013)).

In Matsumura, this district court found that a wrongful foreclosure claim will not lie where the foreclosing party properly provided all required notices, and

> although Hawaii has not specifically
> recognized a common law wrongful
> foreclosure cause of action, "[s]ubstantive wrongful
> foreclosure claims [in other jurisdictions]
> typically are available after foreclosure and
> are premised on allegations that the borrower
> was not in default, or on procedural issues
> that resulted in damages to the borrower."
> Cervantes v. Countywide Home Loans, 656 F.3d
> 1034, 1043 (9th Cir. 2011).

2012 WL 463933, at *3.

As discussed supra with respect to the First and Second Causes of Action, Kama's H.R.S. Chapter 667 claims, which are premised on allegations that BANA lacked authority to foreclose on the Property and failed to provide public notice of the continued foreclosure sale date, are insufficient to survive the instant Motion to Dismiss. Accordingly, Kama cannot assert a wrongful foreclosure claim based on violations of H.R.S. Chapter 667. Additionally, the Court notes that Kama's wrongful foreclosure claim is not premised on allegations that he was not in default. See Cervantes, 656 F.3d at 1043.

40

While this count is pled in a vague manner, it appears Kama's claims under H.R.S. § 480-2 and for promissory estoppel include the assertions and relief he is seeking in this count. Because of the vague pleading the Court will grant the dismissal of this count without prejudice and allow Kama to file an amendment should he wish to pursue this claim.

**F. Sixth Cause of Action: Promissory Estoppel**

Kama alleges in the Sixth Cause of Action that he

> justifiably relied on [BANA's] statement that no foreclosure would be held while he was in the loss mitigation process, and that [Kama] would be able to lower his monthly mortgage payments permanently if he complied with the terms of a HAMP loan modification offer that was allegedly forthcoming.

> [] Kama's reliance was to his substantial economic detriment, as he passed up other opportunities, including seeking another type of loan modification, refinancing his home loan or even bankruptcy, and now he must take extraordinary actions to annul and void a defective and improperly held foreclosure sale of his home.

(Third-Party Compl. ¶¶ 107-08.)

To establish a promissory estoppel claim under Hawaii law, Kama must satisfy the following four elements:

> (1) There must be a promise; (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's promise; and (4) Enforcement of the promise is necessary to avoid injustice.

Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Haw. 149,

164-65 (Haw. 2002) (citing In re Herrick, 82 Haw. 329, 337-38 (Haw. 1996)).

In this case, the Court finds that, for purposes of the instant Motion to Dismiss, Kama sufficiently alleges the required elements of a Hawaii promissory estoppel claim. Specifically, as previously discussed, Kama alleges that was told by a BANA representative in early April 2011 that his HAMP application was complete and that no other documentation was needed. (Third-Party Compl. ¶ 21.) Kama further alleges that, on a separate occasion, he was told by a BANA representative named "Bonita" that it looked like he qualified for a HAMP loan modification and that, as long as he abided by the terms of paperwork which were forthcoming in the mail, no foreclosure would take place. (Id. ¶ 22.) Additionally, and importantly, Kama alleges that Bonita told him that she sent him a loan modification agreement in the mail. (Id. ¶ 77.) Kama asserts that he justifiably relied to his detriment on these statements[21/] by

--------

[21/]At the September 15, 2014 hearing, Kama's counsel stated that Kama was attempting to acquire certain documents from his ex-wife in order to complete the HAMP loan modification application (although Kama's counsel later stated he was unsure). However, as previously noted, Kama alleges in his Third-Party Complaint that he was told by a BANA representative in early April 2011 that his HAMP application was complete and that no other documents were needed. (Third-Party Compl. ¶ 22.) Although this incongruity raises some question as to whether Kama's reliance on the BANA representative's statement was reasonable, the Court concludes that it is insufficient alone to grant Third-Party Defendants' Motion to Dismiss as to Kama's Hawaii
(continued...)

passing up other opportunities, including refinancing through other lenders and bankruptcy. (Id. ¶ 108.)

Third-Party Defendants assert that the "allegations in the Third-Party Complaint show the lack of any specific promise, as [Kama] alleges not that he was promised a loan modification, but that he was told by BANA 'that it looked like he qualified for a HAMP loan modification.'" (Mot. to Dismiss at 18) (quoting Third-Party Compl. ¶ 22) (emphasis added by Third-Party Defendants.) Contrary to Third-Party Defendants' assertion, Hawaii law does not require a plaintiff to show a specific and definite promise in order to establish a promissory estoppel claim. The Hawaii Supreme Court "has defined a 'promise' for purposes of promissory estoppel to be a 'manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'" Gonsalves, 100 Haw. at 165 (quoting In re Herrick, 82 Haw. at 338). "More specifically, a 'promisor manifests an intention' if he or she 'believes or has reason to believe that the promisee will infer that intention from his [or her] words or conduct.'" Id. Here, Kama sufficiently alleges that BANA representatives had reason to believe that Kama would infer from their statements that he qualified for a HAMP loan

_____

[21]/(...continued)
promissory estoppel claim.

modification and that if he complied with the terms of the
paperwork from BANA which were forthcoming in the mail, the
Property would not be foreclosed upon. (Third-Party Compl. ¶ 22.)

For these reasons, the Court concludes that Kama
adequately pleads a promissory estoppel claim under Hawaii law
and, therefore, Third-Party Defendants' Motion is denied as to
the Sixth Cause of Action.[22] [23]

### G. Seventh Cause of Action: Violation of 5th Amendment Due Process Clause

Kama alleges in the Seventh Cause of Action that
Freddie Mac and FHLMC Trust are government actors who violated
his due process rights under the Fifth Amendment to the U.S.
Constitution by participating in the  non-judicial foreclosure
sale of the Property. (Id. ¶¶ 113-30.) This cause of action fails
for two reasons. First, although Freddie Mac acquired the
Property by quitclaim deed (see Mot. to Dismiss Ex. F), Freddie
Mac and FHLMC Trust were not involved in the foreclosure sale of
the Property. Rather, BANA conducted the non-judicial foreclosure

---

[22]Although the Court denies Third-Party Defendants' Motion
to Dismiss with respect to Kama's Hawaii promissory estoppel
claim, in the event Kama decides to file an amended complaint,
the Court directs him to provide more specific factual
allegations regarding this claim, particularly regarding the
names of the BANA representatives who allegedly made oral
representations to him.

[23]The Court will not address whether Hawaii's Statute of
Frauds bars Kama's promissory estoppel claim. See footnote 20 of
this Order supra.

sale of the Property. (Id. Exs. D & E). Second, as will be
explained directly below, Freddie Mac is not a government actor
subject to liability under the Fifth Amendment.

The Fifth Amendment provides that no person shall
"be deprived of life, liberty, or property, without due process
of law[.]" U.S. Const. amend V. It is well-settled that the Fifth
Amendment applies only to federal government actors. Lee v. City
of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001). In Lebron v.
National Railroad Passenger Corp., 513 U.S. 374, 400 (1995), the
Supreme Court held that government-created corporations like
Freddie Mac are federal governmental actors if they are created
by special law for the furtherance of governmental objectives and
if the government has permanent authority to appoint a majority
of the directors of the corporation. Applying this holding of
Lebron, the Ninth Circuit has concluded "that Freddie Mac is not
a government agency subject to the Fifth Amendment's Due Process
Clause." Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.,
75 F.3d 1401, 1409 (9th Cir. 1996).

This Court notes that Am. Bankers was issued before
FHFA, a federal agency, became Freddie Mac's conservator in 2008.
However, numerous district courts have held that Freddie Mac, and
similar entity Federal Nation Mortgage Association ("Fannie
Mae"), which was also placed into FHFA's conservatorship, did not
become federal governmental actors post-conservatorship. See,

e.g., Herron v. Fannie Mae, 857 F.Supp.2d 87, 92 (D.D.C. 2012)
("Further, the imposition of conservatorship and the execution of
the Financial Agency Agreement did not transform Fannie Mae into
a governmental actor."); Dias v. Fed. Nat. Mortg. Ass'n et al.,
990 F.Supp.2d 1042, 1062 (D. Haw. 2013) ("The Court agrees with
those courts in this Circuit and others that have considered and
rejected Plaintiff's argument that Fannie Mae is a government
actor by virtue of the FHFA conservatorship."); Fannie Mae v.
Mandry, No. 12-13236, 2013 WL 687056, at *4 (E.D. Mich. Feb. 26,
2013) (finding that "FHFA's conservatorship [of Fannie Mae] does
not create the type of permanent control required under Lebron").
A court in this circuit has discussed the reasoning behind these
decisions:

> [FHFA], as conservator for Freddie Mac,
> "step[ed] into the shoes" of Freddie Mac,
> much like a bankruptcy trustee. See 12 U.S.C.
> § 4617(b)(2)(A)(I) (FHFA Conservator,
> immediately upon the inception of
> conservatorship, succeeds to "all rights,
> titles, powers, and privileges of the
> regulated entity, and of any stockholder,
> officer, or director"); Herron v. Fannie Mae,
> 857 F.Supp.2d 87, 2012 WL 1476051 (D.D.C.
> Apr. 30, 2012) ("Thus, like FDIC when it
> serves as conservator or receiver of a
> private party, FHFA when it serves as
> conservator 'step[s] into the shoes' of the
> private corporation, Fannie Mae."); O'Melveny
> & Myers v. FDIC, 512 U.S. 79, 86-87 (1994)
> (under a materially identical statute, "the
> FDIC as receiver 'steps into the shoes' of
> the [pre-existing institution], obtaining the
> rights 'of th[e] institution that existed
> prior to receivership"); Am. Nat. Ins. Co. v.
> FDIC, 642 F.3d 1137, 1144 (D.C. Cir. 2011);

46

<u>United States v. Beszborn</u>, 21 F.3d 62, 68
(5th Cir. 1994). Therefore, Freddie Mac does
not become a governmental actor for Fifth
Amendment purposes merely because it is
placed into conservatorship. The [FHFA's]
"control" is merely the control that Freddie
Mac had before the conservatorship. As the
Court in <u>Herron</u> succinctly concluded, "Fannie
Mae was not converted into a government
entity when it was placed into
conservatorship; instead, FHFA stepped into
the shoes of Fannie Mae. FHFA as conservator
for Fannie Mae is not a government actor.
<u>Herron</u>, 2012 WL 1476051 at *6. In addition,
the temporary nature of the Federal Housing
Finance Agency's conservatorship of Freddie
Mac also supports the conclusion that Freddie
Mac has not been transformed into a
governmental actor. <u>Herron</u>, 2012 WL 1476051
at *7 (holding that because the Federal
Housing Finance Agency's conservatorship "is
by nature temporary, the government has not
acceded to permanent control over the entity
and Fannie Mae remains a private
corporation.").

<u>Syriani v. Freddie Mac Multiclass Certificates, Series 3365</u>, No.

CV 12-3035-JFW (JEMx), 2012 WL 6200251, at *4 (C.D. Cal. July 10,

2012).

Kama asserts that Freddie Mac is a federal entity

because it has signed a Financial Agency Agreement ("FAA") with

the U.S. Department of Treasury wherein Freddie Mac agrees to

"serve as a financial agent of the United States." <u>See</u> "Financial

Agency Agreement for a Homeownership Preservation Program under

the Emergency Economic Stabilization Act of 2008," <u>available at</u>

http://www.treasury.gov/initiatives/financial-stability/procureme

nt/faa/Financial_Agency_Agreements/Freddie%20Mac%20Financial%20Ag

ency%20Agreement.pdf. In <u>Herron</u>, the court found that the FAA between Fannie Mae and the Treasury did not transform Fannie Mae into a federal entity because the FAA stated that Fannie Mae was "distinct from the government and must maintain a fiduciary duty of loyalty to the federal government." 857 F.Supp.2d at 96. Likewise, the FAA between Freddie Mac and the Treasury indicates that Freddie Mac is distinct from the government, with a "fiduciary duty of loyalty to the United States" and potential liability to the Treasury for various acts or omissions. <u>See</u> FAA §§ 5, 19. Accordingly, the Court finds that the FAA between Freddie Mac and the Treasury does not establish that Freddie Mac is a federal entity subject to Fifth Amendment liability.

In sum, and consistent with the federal court decisions discussed above, this Court concludes that neither the FAA nor FHFA's conservatorship transforms Freddie Mac into a federal governmental actor that can be held liable for Fifth Amendment due process violations. Thus, even if the Court assumed arguendo that Freddie Mac (rather than BANA) conducted the non-judicial foreclosure sale of the Property, Kama's Fifth Amendment due process claim would still fail. Accordingly, the Seventh Cause of Action is dismissed without prejudice.

### H. Eighth Cause of Action: Quiet Title

Kama alleges in the Eighth Cause of Action that Third-Party Defendants have "no estate, right, title or interest

48

in the Subject Property" and, therefore, Kama is entitled to a declaration that "the title to the Subject Property is vested in him alone[.]" (Third-Party Compl. ¶ 139.)

The Court infers that Kama is making a claim under H.R.S. § 669-1(a). That statute provides that a quiet title action "may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."

A plaintiff bringing a statutory quiet title claim against a mortgagee or purported servicer for the mortgagee is required to allege that he is able to tender the amount of indebtedness. See Nat'l Mortg. Ass'n v. Kamakau, Civ. No. 11-00475 JMS/BMK, 2012 WL 622169, at *9 (D. Haw. Feb. 23, 2012) ("A basic requirement of an action to quiet title is an allegation that plaintiffs are the rightful owners of the property, i.e., that they have satisfied their obligations under the [note and note and mortgage].") (internal quotation marks and citation omitted); and Benoist v. U.S. Bank Nat. Ass'n, Civ. No. 10-00350 JMS-KSC, at *10, 2012 WL 3202180 (D. Haw. Aug. 3, 2012) ("[T]ender is required, regardless of whether the claim is based on common law or statute."). "Cases from this district and elsewhere rely on this rule requiring a plaintiff 'to establish his superior title by showing the strength of his title as

opposed to merely attacking the title of the defendant.'" <u>Id.</u> (quoting <u>Amina v. Bank of N.Y. Mellon</u>, Civ. No. 11-00714 JMS/BMK, 2012 WL 3283513, at *3 (D. Haw. Aug. 9, 2012)).

Here, although Kama asserts in his memorandum in opposition that he is "eager, willing, and able to pay his mortgage," he has not alleged in his Third-Party Complaint that he has paid off the Note or is able to tender all amounts owing. Accordingly, Kama fails to state a claim for quiet title. The Eighth Cause of Action is therefore dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court DENIES Kama's Motion to Stay Proceedings Pending Appeal of Related Cases.

The Court also GRANTS IN PART AND DENIES IN PART Third-Party Defendants' Motion to Dismiss as follows:

(1) GRANTS Third-Party Defendants' Motion to Dismiss as to the First Cause of Action (Lack of Legal Right to Foreclose) and dismisses the claims WITHOUT PREJUDICE;

(2) GRANTS Third-Party Defendants' Motion to Dismiss as to the Second Cause of Action (Violation of H.R.S. Chapter 667) regarding Kama's claim that BANA failed to publicly announce the continued foreclosure sale date and dismisses the claim WITHOUT PREJUDICE, and GRANTS Third-Party Defendants' Motion to Dismiss as to the Second Cause of Action regarding Kama's claim that Freddie Mac's bid violated the initial terms of sale and

dismisses the claim WITHOUT PREJUDICE;

(3) GRANTS Third-Party Defendants' Motion to Dismiss as to the Third Cause of Action (Breach of HAMP Contract) and dismisses the claims WITHOUT PREJUDICE;

(4) DENIES Third-Party Defendants' Motion to Dismiss as to the Fourth Cause of Action (Violation of H.R.S. § 480-2);

(5) GRANTS Third-Party Defendants' Motion to Dismiss as to the Fifth Cause of Action (Wrongful Foreclosure) and dismisses the claims WITHOUT PREJUDICE;

(6) DENIES Third-Party Defendants' Motion to Dismiss as to the Sixth Cause of Action (Promissory Estoppel);

(7) GRANTS Third-Party Defendants' Motion to Dismiss as to the Seventh Cause of Action (Violation of Fifth Amendment Due Process Clause) and dismisses the claims WITHOUT PREJUDICE; and

(8) GRANTS Third-Party Defendants' Motion to Dismiss as to the Eighth Cause of Action (Quiet Title) and dismisses the claims WITHOUT PREJUDICE.

The Court also GRANTS Kama leave to file an amended complaint within thirty (30) days of the date of this Order to address the rulings set forth in this Order. The Court CAUTIONS Kama that, if he fails to timely file an amended complaint, the claims which this Court has dismissed without prejudice will be automatically dismissed with prejudice. Further, if the amended

complaint fails to address the defects identified in this Order, the Court may dismiss such claims with prejudice.

IT IS SO ORDERED

DATED:  Honolulu, Hawaiʻi, October 3, 2014.



Alan C. Kay
Senior United States District Judge

Federal Home Loan Mortgage Corporation v. Kama, Civ. No. 14-00137 ACK-KSC: ORDER DENYING COUNTERCLAIM/THIRD-PARTY PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF RELATED CASES AND GRANTING IN PART AND DENYING IN PART COUNTERCLAIM DEFENDANT AND THIRD-PARTY DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT