IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| ROBERT H.Y. KAMA, | ) ) | |
| Defendant/Counterclaim Plaintiff/Third Party Plaintiff, | ) ) ) ) | Civ. No. 14-00137 ACK-KSC |
| vs. | ) ) ) | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, BANK OF AMERICA, N.A., AS SUCCESSOR-IN-INTEREST TO BAC HOME LOANS SERVICING, L.P., AND FHLMC S/A 3-DAY ARC-125949, | ) ) ) ) ) ) ) | |
| Counterclaim Defendant and Third Party Defendants. | ) ) ) ) ) | |

ORDER 1) DENYING IN PART AND SUA SPONTE STAYING IN PART
COUNTERCLAIM DEFENDANT AND THIRD PARTY DEFENDANTS' MOTION TO
DISMISS COUNTS 1 AND 3 OF THE AMENDED THIRD PARTY COMPLAINT;
AND 2) SUA SPONTE STAYING THE CASE

For the reasons set forth below, the Court DENIES IN

PART AND STAYS IN PART Counterclaim Defendant Federal Home Loan

Mortgage Corporation ("Freddie Mac"), Third Party Defendant Bank

of America N.A., as successor-in-interest to BAC Home Loan

Servicing, L.P. ("BANA"), and Third Party Defendant FHLMC S/A 3

day ARCH-125949's ("FHLM") (collectively, "Third Party Defendants") Motion to Dismiss Counts 1 and 3 of the Amended Third Party Complaint ("Motion to Dismiss" or "MTD"), ECF No. 35.  The Court denies the Motion to Dismiss as to Count 3 (wrongful foreclosure) and stays consideration of the Motion to Dismiss as to Count 1 (violation of HRS Chapter 667).  The Court additionally STAYS the proceedings as discussed below.

## BACKGROUND

This matter arises from the foreclosure of residential property located on the Big Island of Hawaii.  The relevant procedural and factual background is as follows.

On December 22, 2006, Defendant, Counterclaim Plaintiff, and Third Party Plaintiff Robert Kama ("Kama") and non-party Lisa Kama[1] entered into a transaction with Finance Factors, Limited ("Finance Factors"), obtaining a $180,000 loan secured by a mortgage ("Mortgage") on their residence at 17-287 Volcano Road, Kurtistown/Keaau,[2] Hawaii ("Property").  MTD, Ex.

---

[1]    Robert and Lisa Kama were married at the time the Mortgage was recorded, but are now divorced.  Am. Compl. ¶¶ 15, 16, ECF No. 29.  Following the divorce, Lisa Kama transferred her ownership interest in the Property to Kama.  Id. ¶ 16.

[2]    The Amended Complaint states the home is located in Keaau, Hawaii but the Mortgage states it is located in Kurtistown.

A, ECF No. 35-3;[3] Am. Compl. ¶ 15, ECF No. 29.  The Mortgage

names Robert and Lisa Kama as "Borrower[s]," Finance Factors as

the "Lender," and non-party Mortgage Electronic Registration

Systems, Inc. ("MERS") as nominee for Lender and as mortgagee

under the Mortgage.  Id.  On September 22, 2010, MERS, as

nominee for Finance Factors, executed an Assignment of Mortgage

("Assignment"), evidencing the assignment of all rights to BAC

Home Loans Servicing, LP (BANA).[4]  MTD, Ex. B, ECF No. 35-4.  The

---

[3]     Pursuant to the "incorporation by reference" doctrine, the Court considers Exhibits A-E attached to the instant Motion to Dismiss, only insofar as discussed herein.  See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) ("Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint.  A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." (citations omitted)); Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that the Ninth Circuit has extended the incorporation by reference doctrine "to situations in which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").

     The Court need not consider Exhibit F to resolve the instant motion because the Court stays the issues relevant to Exhibit F, as discussed below.

[4]     BANA is the successor-by-merger and successor-in-interest to BAC Home Loans Servicing, LP.  All references herein will be to BANA and not BAC Home Loans Servicing, LP.

State of Hawaii Bureau of Conveyances recorded the Assignment on October 7, 2010. Id. On October 21, 2010, BANA as record assignee of the Mortgage, recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice of Sale"). Id. Ex. C, ECF No. 35-5.

Sometime in 2010, as a result of a workplace injury, Kama sought a loan modification from BANA through the federal Home Affordable Modification Program ("HAMP"). Am. Compl. ¶¶ 19, 22, ECF No. 29. A representative at BANA named "Bonita Black" told Kama "that it looked like he qualified for a HAMP loan modification" and "that as long as he complied with the terms of the paperwork . . . which was forthcoming in the mail, he would not be foreclosed on." Id. ¶ 21. Kama complied with the requests for paperwork from BANA "and was told . . . in early April, 2011, that his HAMP application was complete and no further documentation was needed from him." Id. ¶ 20. Kama also received a letter from BANA stating that he "would not lose his home during the loan modification evaluation." Id. ¶ 38 (citing Am. Compl., Ex. B).

However, on April 21, 2011, the State of Hawaii Bureau of Conveyances recorded a Mortgagee's Affidavit of Foreclosure Under Power of Sale ("Affidavit of Sale"), evidencing the sale of the Property on April 11, 2011 to BANA. MTD, Ex. D, ECF No. 35-6; Am. Compl. ¶ 23, ECF No. 29. On June 22, 2011, BANA

executed a Mortgagee's Quitclaim Deed Pursuant to Power of Sale, which granted the Property to Freddie Mac.  MTD, Ex. E, ECF No. 35-6.

On October 18, 2012, Freddie Mac filed an Ejectment Complaint in the Circuit Court of the Third Circuit, State of Hawaii ("state circuit court").  See Notice of Removal at 2, ECF No. 1.  On August 20, 2013, Kama filed an Answer, Counterclaim, and Third Party Complaint (Complaint) against Counterclaim Defendant Freddie Mac and Third Party Defendants BACHLS,[5] Federal Housing Finance Agency ("FHFA"), and FHLM.  Id. Ex. A, ECF No. 1-2.  The Complaint raised the following claims: 1) Violation of Hawaii Revised Statutes ("HRS") Chapter 667[6] (Lack of Legal Right

---

[5]    The Complaint incorrectly listed BACHLS rather than BANA as a third party defendant.  See Order Denying Counterclaim/Third-Party Plaintiff's Motion to Stay Proceedings Pending Appeal of Related Cases and Granting in Part and Denying in Part Counterclaim Defendant and Third-Party Defendants' Motion to Dismiss Counterclaim and Third-Party Complaint ("Order") at 6 n.6, ECF No. 28.

[6]    HRS Chapter 667 sets forth the procedures governing foreclosures in the State of Hawaii.  HRS Chapter 667 was substantially amended on May 5, 2011, and again on June 18, 2012.  See 2011 Haw. Sess. Laws Act 48 (approved May 5, 2011); 2012 Haw. Sess. Laws Act 182 (approved June 18, 2012).  These amendments do not apply to foreclosures that took place prior to their approval.  See 2011 Haw. Sess. Laws Act 48, § 45 (stating that "[t]his Act shall take effect upon its approval"); 2012 Haw. Sess. Laws Act 182, § 69 (same).  Because the foreclosure of the Property occurred on April 11, 2011, these amendments do not apply to the foreclosure procedures used in this case.  Accordingly, all references to HRS Chapter 667 in this Order are to the 2008 version.  HRS §§ 667-5 to 667-10
(continued . . . )

to Foreclose); 2) Violation of HRS Chapter 667 (Failure to Provide Public Announcement of Continued Date and to Follow Initial Terms of Sale); 3) Breach of Contract – Third Party Beneficiary of HAMP Contract; 4) Unfair and Deceptive Acts and Practices ("UDAP") In Loss Mitigation; 5) Wrongful Foreclosure; 6) Promissory Estoppel; 7) Unconstitutional Deprivation of Kama's Property Without Due Process of Law; and 8) Quiet Title. Id.

In the state circuit court, Freddie Mac filed a Motion for Summary Judgment on the Ejectment Complaint and prevailed on February 25, 2014.  Notice of Removal, Ex. B, ECF No. 1-3. Freddie Mac filed a Notice of Removal to remove Kama's Complaint to this Court on March 18, 2014, pursuant to 12 U.S.C. § 1452(f).[7]  Notice of Removal at 1, ECF No. 1.

On April 1, 2014, Third Party Defendants filed a Motion to Dismiss the Complaint in its entirety with prejudice

---

( . . . continued)
governed the process of non-judicial foreclosure pursuant to a power of sale.  HRS §§ 667-5 to 667-8 were repealed by the Hawaii legislature in 2012.  2012 Haw. Sess. Laws Act 182, § 50.

[7]    12 U.S.C. § 1452(f) provides that "all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value[.]"  The statute further provides that any state action to which Freddie Mac is a party may at any time before trial be removed to a United States district court by Freddie Mac.  12 U.S.C. § 1452(f).

and without leave to amend.  ECF No. 7.[8]   The Court held a

hearing regarding Third Party Defendants' Motion to Dismiss on

September 15, 2014.  At the hearing, Kama orally moved to stay

the proceedings.  The Court directed Kama to file a written

motion to stay the proceedings, which Kama filed on September

22, 2014.  ECF No. 24.

On October 3, 2014, the Court denied Kama's motion to

stay and granted in part and denied in part Third Party

Defendants' Motion to Dismiss.  Order at 1, ECF No. 28.

Specifically, the Court dismissed without prejudice Kama's

violation of HRS Chapter 667 claims, breach of contract claim,

wrongful foreclosure claim, due process claim, and quiet title

claim.  Id. at 22-33, 39-41, 44-50.  The court denied Third

Party Defendants' Motion to Dismiss with respect to Kama's UDAP

claim and promissory estoppel claim.  Id. at 33-38, 41-44.  The

Court granted Kama leave to file an amended complaint within 30

days.  Id. at 51.

---

[8]    FHFA filed a separate Motion to Dismiss the Complaint.
ECF No. 10.  FHFA's Motion only sought to dismiss the
Complaint's Seventh Cause of Action.  Id.  On May 13, 2014,
however, Kama filed a "Notice of Voluntary Dismissal of Claims
Against Defendant Federal Housing Finance Agency" wherein Kama
voluntarily dismissed not only the Seventh Cause of Action as to
FHFA, but also every other cause of action in the Complaint
asserted against FHFA.  ECF No. 18.  As a result, FHFA was
dismissed from this action and FHFA's Motion was deemed
withdrawn.  See Order at 9-10.

On October 31, 2014, Kama filed the Amended Complaint at issue.  Am. Compl., ECF No. 29.  The Amended Complaint asserts four "cause[s] of action" against Third Party Defendants: 1) Violations of HRS Chapter 667 (Count 1); 2) Unfair and Deceptive Acts and Practices pursuant to HRS § 480:2 (Count 2); 3) Wrongful Foreclosure (Count 3); and 4) Promissory Estoppel (Count 4).  Id. ¶¶ 89-119.

On December 1, 2014, Third Party Defendants filed a Motion to Dismiss Counts 1 and 3 of the Amended Complaint.  MTD, ECF No. 35.  Between December 2014 and August 2015, the parties requested and received from the Court several continuances of the hearing date on the Motion to Dismiss, to allow for loan modification review in attempt to resolve the matter.  See ECF Nos. 38-41, 46, 48.  Accordingly, on August 11, 2015 the Court terminated the pending Motion to Dismiss and directed Third Party Defendants to inform the Court if they wished to reinstate the motion following the loan modification review process.  Minute Order at 2, ECF No. 48.  On November 19, 2015, the Motion to Dismiss was reinstated, and a hearing date set for February 8, 2016.  ECF No. 56.

On January 19, 2016, Kama filed a Memorandum in Opposition to Third Party Defendants' Motion to Dismiss ("Opposition").  ECF No. 59.  On January 25, 2016, Third Party

Defendants filed a Reply in support of their Motion to Dismiss ("Reply").  ECF No. 60.

A hearing on the Motion to Dismiss was held on February 8, 2016.[9]  At the hearing, the Court requested that Third Party Defendants file information in response to questions posed by the Court.  Accordingly, on February 12, 2016, Third Party Defendants filed a Supplemental Brief in Support of their Motion to Dismiss ("Supp. Brief").  ECF No. 66.  Kama filed a Responsive Supplemental Brief in Opposition to the Motion to Dismiss ("Resp. Supp. Brief") on February 17, 2016.  ECF No. 67.[10]

---

[9] Kama's attorney, Paul Sulla, filed a Motion to Withdraw prior to the hearing.  ECF No. 57.  At the hearing, Mr. Sulla agreed that he was moving to withdraw for financial reasons, that he had filed an Opposition to the Motion to Dismiss, and that he was able to adequately represent Kama at the hearing.  Mr. Sulla further agreed that the hearing on his Motion to Withdraw could be deferred to a later date.  In view of what transpired at the hearing on the Motion to Dismiss and the ruling by this Court staying in part and denying in part the Motion to Dismiss and staying the case, the Court directs Mr. Sulla to reconsider whether he wishes to withdraw as Kama's attorney in this matter, and if he does, to request a new hearing date on his Motion to Withdraw from Magistrate Judge Kevin Chang.

[10] Both parties attached several documents to their supplemental briefs.  The Court will not consider the documents submitted by the parties in their supplemental briefs for the purposes of the Motion to Dismiss.

However, the Court notes that apparently the foreclosure sale of the Property was continued three times without newspaper publication and apparently without written notice to Kama; although Attorney Derek Wong, who signed the Affidavit of

(continued . . . )

**STANDARDS**

## I.  Motion to Dismiss

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the court must

_____

( . . . continued)
Foreclosure, represented that he made a public announcement at the specified auction location at the time of each continuance, and it appears the continuances were made because BANA was considering Kama's HAMP Loan Modification Application.  See Supp. Brief, Exs. A, B, E (Notices of Continuance of Sale), ECF Nos. 66-3, 66-4, 66-7.

The Court also notes that apparently, as late as March 31, 2011, BANA contacted Kama to request further documents; that is, BANA's request to Kama was made 11 days before the foreclosure sale occurred.  See Supp. Brief, Ryan Dansby Decl. ¶ 20, ECF No. 66-1.  The Court further notes that Kama provided a document to the Court from BANA apparently indicating that BANA had received all requested documentation and that his file was complete.  Resp. Supp. Brief, Ex. A, ECF No. 67-2.

The Court reiterates that it is not considering any of the aforesaid documents submitted with the supplemental briefs for the purposes of deciding the Motion to Dismiss.

construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).  The complaint must contain sufficient factual matter accepted as true to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).  "In considering a motion to dismiss, the court is not deciding whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted." Tedder v. Deutsche Bank Nat. Trust Co., 863 F. Supp. 2d 1020, 1030 (D. Haw. 2012) (citing Twombly, 550 U.S. at 563 n.8).

## II.  Stay of Case

A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District

Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").  The inherent power to stay includes granting an order to stay "pending resolution of independent proceedings which bear upon the case."  <u>Leyva v. Certified Grocers of Cal., Ltd.</u>, 593 F.2d 857, 863 (9th Cir. 1979).  Where a stay is considered pending the resolution of another action, the court need not find that two cases possess identical issues; a finding that the issues are substantially similar is sufficient to support a stay.  <u>See Landis</u>, 299 U.S. at 254.  The issues involved in the pending proceedings need not be "controlling of the action before the court" for a stay to be ordered.  <u>Leyva</u>, 593 F.2d at 864.

In determining the propriety of a stay, the Court must "weigh competing interests and maintain an even balance."  <u>Landis</u>, 299 U.S. at 254-55.

## DISCUSSION

### I.   The Court Denies the Motion to Dismiss as to Count 3: Wrongful Foreclosure

Kama's Amended Complaint alleges that the foreclosure sale was "wrongful and without right" because 1) it "was conducted in breach of BAC/BOA's promise not to foreclose while they were in the process of sending Mr. Kama a loan modification offer," 2) "the Notice of Intent to foreclose provided the incorrect auction location description and thus was legally

12

deficient and of no legal effect", 3) the continued foreclosure date was never published, and 4) "the foreclosure, as a whole, was conducted in a manner that was in violation of H.R.S. 480 et seq. [UDAP], and was therefore wrongful and without right."  Am. Compl. ¶ 110, ECF No. 29.  Kama's allegations include his contention that BANA "breached its duties to act in good faith to sell the Subject Property to the owners' best advantage and to use reasonable diligence to secure the best possible price, because it adopted foreclosure policies and practices designed and intended to deter public participation and 'chill' bid prices at non-judicial auctions."  Am. Compl. ¶ 57, ECF No. 29.

As the Court noted in its previous Order, "[a] wrongful foreclosure claim is a state law claim."  Lowther v. U.S. Bank, N.A., 971 F. Supp. 2d 989, 1011 (D. Haw. 2013) (citing Doran v. Wells Fargo Bank, Civil No. 11-00132 LEK-KSC, 2011 WL 5239738, at *9 (D. Hawaii Oct. 31, 2011)); see also Order at 39, ECF No. 28.

A recent Hawaii Supreme Court decision related to a non-judicial foreclosure appears to support the viability of a wrongful foreclosure claim in cases such as Kama's.  In Kondaur Capital Corporation v. Matsuyoshi, the Hawaii Supreme Court addressed the validity of a non-judicial foreclosure in the context of an ejectment action.  361 P.3d 454 (Haw. 2015).  In doing so, the court discussed the duties imposed on mortgagees

in non-judicial foreclosures, particularly where the "mortgagee acts as both the seller and the purchaser of the subject property."  Id. at 456.  Here, as in Kondaur, BANA (as successor-in-interest to BACHLS) was the mortgagee and also purchased the Property.  Thus, the duties described in Kondaur apply.

In Kondaur, the court first examined the applicability of Ulrich v. Security Investment Company, 35 Haw. 158 (Haw. Terr. 1939), a case related to a non-judicial foreclosure of the mortgagor's "law firm and chattels."  Kondaur, 361 P.3d at 462. In Ulrich, the court determined that "[t]he legal duties imposed upon the mortgagee required it to use all fair and reasonable means in obtaining the best prices for the property on sale and" that because "the sale was not made in good faith, that the amount received upon the sale was inadequate and that the mortgagee took a wrongful and unfair advantage of the mortgagor, the foreclosure sale must be set aside."  35 Haw. at 168 (emphasis added).  The court appeared to use the terms "best price(s)" and "adequate price(s)" interchangeably in describing the mortgagee's duty, further noting in the same paragraph that, "where the mortgagee himself purchases at the sale, the burden is on him to show that the sale was regularly and fairly conducted in every particular, and that an adequate price was

paid for the goods sold."  Id. (emphasis added) (citation omitted).

Several pages later, the court again made reference to the mortgagee's duties in terms of demonstrating that the "best price" was obtained.  Specifically, the court stated that "[o]ne of the legal duties required of a mortgagee upon the execution by him of a power of sale contained in a mortgage is to exercise reasonable diligence to secure the best possible prices upon the foreclosure sale of the property to be sold."  Id. at 172 (emphasis added).  The court then turned to particular deficiencies related to the foreclosure sale at issue, noting, inter alia, that the defendant, who conducted the foreclosure sale, "kept the sale as quiet as possible" and in doing so, violated his duties.  Id.  In this respect, the court explained that publically announcing the foreclosure sale is critical, stating that "[o]ne of the ordinary and usual methods employed . . . to obtain the best possible prices on a foreclosure sale is to give the impending sale publicity."  Id. at 172-73.  After referencing the "best price" twice in describing the mortgagee's duties, the court again switched to using the term "adequate price," stating that "it affirmatively appears that the mortgagee, due to its neglect to observe the duties incumbent upon it, failed to sell the property . . . for an adequate price."  Id. at 174 (emphasis added).  Based on the Ulrich

15

court's determination that the mortgagee failed "to show that the sale was regularly and fairly conducted in every particular and that an adequate price was paid for the property sold," id. at 181, the court "vacated and set aside" the foreclosure sale, id. at 186.

In Kondaur, the court held that Ulrich applied to non-judicial foreclosures of real property, despite arguments to the contrary.  361 P.3d at 466-67.  On this basis, the court held that under Ulrich, mortgagees have the duty "to exercise their right to non-judicial foreclosure under a power of sale in a manner that is fair, reasonably diligent, and in good faith, and to demonstrate that an adequate price was procured for the property."  Id. at 467.  In its discussion of Ulrich, the Kondaur court appeared to adopt the Ulrich court's use of the terms "best" and "adequate" interchangeably, stating in the same paragraph that a mortgagee's duties include the "use [of] all fair and reasonable means in obtaining the best prices for the property on sale" and that where the mortgagee purchases the property, the burden is on the mortgagee to "show that . . . an adequate price was paid for the goods sold."  Id. at 462 (emphases added) (quoting Ulrich, 35 Haw. at 168).

The court determined that Kondaur[11] failed to satisfy its "initial burden" of demonstrating that the sale was conducted fairly, diligently, and in good faith.  Id. at 470. In this respect, the court rejected a claim that introduction of the Affidavit of Sale satisfied this requirement.  Id. at 469. To the contrary, the court noted that the Affidavit of Sale contained no information regarding the "fairness and regularity of the foreclosure sale" and "[did] not make any declaration concerning the adequacy of [the] price" at which the subject property was sold.  Id. at 469-70.  The court further explained that "the Ulrich requirements are not statutorily or contractually based" but that "[i]nstead, they are separate and distinct from the requirements of the foreclosure statute and the operative mortgage."  Id. at 470.  Based on the court's determination that Kondaur failed to meet its initial burden of demonstrating that the foreclosure sale satisfied Ulrich, the court vacated the trial court's granting of summary judgment in Kondaur's favor in the ejectment action and remanded the case for further proceedings.  Id. at 470-71.

---

[11] The court noted that because Kondaur was "a quitclaim transferee of a self-dealing mortgagee" Kondaur was required to introduce evidence to satisfy the Ulrich requirements.  Id. at 469.  In Kondaur, the mortgagee purchased the subject property at the foreclosure sale and thereafter conveyed the property to Kondaur Capital Corporation.  Id. at 457.

Guided by the Hawaii Supreme Court's decision in Kondaur, the Court concludes that Kama has sufficiently pled a wrongful foreclosure claim.  In particular, Kama has alleged that the mortgagee breached its duty to act in good faith in connection with the foreclosure sale, as required by Kondaur and Ulrich.  To support these claims, Kama cites to the mortgagee's policies and practices in connection with the foreclosure sale, which he maintains resulted in the sale of the Property at less than market value, including the allegations that the initial published auction date was delayed for four months, the continued auction dates were never published, and the foreclosure took place despite the mortgagee's promise not to foreclose[12] while Kama's loan modification was pending.  Am.

_____

[12]     In the Motion to Dismiss, Third Party Defendants argue that this claim is barred by Hawaii's Statute of Frauds, stating that "any oral assertions made during the loss mitigation process are irrelevant."  MTD at 14, ECF No. 35-1.  Hawaii's Statute of Frauds, HRS § 656-1(8), requires a "writing" to bring an action "[t]o charge any financial institution upon an agreement by the financial institution to lend money or extend credit in an amount greater than $50,000."  However, Kama's Amended Complaint alleges that BANA "clearly promised, in writing that Mr. Kama 'would not lose his home during the loan modification evaluation.'"  Am. Compl. ¶ 38, ECF No. 29.  In support of his claim, Kama attached to the Amended Complaint a letter from BANA to Robert and Lisa Kama dated March 6, 2011, requesting each borrower to complete by March 21, 2011 a signed and dated copy of IRS form 4506-T.  Id. Ex. B, ECF No. 29-2. The letter stated that "no foreclosure sale will be conducted and you will not lose your home during the [HAMP] evaluation" but also noted that foreclosure proceedings would resume if the required documents were not received by March 21, 2011.  Id.
(continued . . . )

Compl. ¶¶ 53, 74, 110, ECF No. 29.[13]  Notably, the allegation

that the sale date was continued without publication relates to

the Ulrich court's conclusion that publicity surrounding the

---

( . . . continued)
Third Party Defendants do not argue in their Motion to Dismiss
that such a writing would fail to satisfy Hawaii's Statute of
Frauds.  Accordingly, the Court does not further consider the
statute of frauds defense.  The Court notes that it is not
convinced that the statute of frauds would bar Kama's claim in
this context, where the alleged promise has been raised as part
of a wrongful foreclosure claim and the wrongful foreclosure
claim invokes the overall fairness and reasonableness of the
foreclosure sale.

[13]    Kama also cites to several practices, in relation to
BANA's duties to act in good faith and with reasonable
diligence, which he claims resulted in UDAP violations.  See Am.
Compl. ¶ 57, ECF No. 29; see also id. ¶¶ 71-83.  The Motion to
Dismiss contends that these practices fail to support a UDAP
claim based on cases previously decided in this district court,
and accordingly Third Party Defendants argue that they also fail
to support a wrongful foreclosure claim.  MTD at 18-23, ECF No.
35-1.
     The UDAP violations raised by Kama may also be
considered separate grounds for wrongful foreclosure.  See Am.
Compl. ¶ 110, ECF No. 29.  The Court finds it is not necessary
to consider the merits of these practices in the instant Motion
to Dismiss because Kama has asserted other grounds for wrongful
foreclosure that withstand the Motion to Dismiss.  Moreover, as
discussed infra, the Court's Order stays the proceedings in the
instant matter pending resolution of related appeals, which
involve UDAP claims in similar contexts.
     The Court similarly does not consider the merits of
Kama's wrongful foreclosure claim based on the allegedly
incorrect auction location in the Notice of Sale.  Id.  This
claim is substantially similar to Kama's claim, within Count 1,
that HRS Chapter 667 was violated because the Notice of Sale
contained misleading information regarding the location of the
foreclosure sale.  See Am. Compl. ¶ 49.  The Court stays
consideration of the Motion to Dismiss as to Count 1 as provided
below.

sale is a critical component of the mortgagee's duty to obtain the best possible price in connection with the sale.  See Ulrich, 35 Haw. at 172-73.  Moreover, as in Kondaur, here it appears that the Affidavit of Sale on its face fails to meet the Ulrich requirements.  Indeed, the Affidavit of Sale contains no mention of the "fairness and regularity of the foreclosure sale" or "any declaration concerning the adequacy of [the] price" at which the Property was sold.  361 P.3d at 469-70.

In their Motion to Dismiss, Third Party Defendants assert that they owed no duty to Kama.  MTD at 16, ECF No. 35-1.  However, the Hawaii Supreme Court's decision in Kondaur makes clear that this is not the case.[14]  In their Reply, Third Party Defendants acknowledge Kondaur, noting that "while the Supreme Court of Hawaii has recently defined a mortgagee's duty to a mortgagor during a nonjudicial foreclosure sale, it has decidedly limited it short of Counterclaim Plaintiff's alleged duty to obtain 'the best possible price.'"  Reply at 13, ECF No. 60 (citation omitted).  At the hearing on the Motion to Dismiss, Third Party Defendants further argued that Kama's Amended Complaint should be dismissed on this basis, because the "best possible price" standard pled by Kama was legally deficient.

---

[14]     The Court notes that Kondaur had not yet been published at the time of the initial filing of the Motion to Dismiss.

The Court rejects Third Party Defendants' contention that the distinction between an "adequate price" and the "best possible price" bars Kama's claim.  As discussed above, the Hawaii Supreme Court in Ulrich and Kondaur appears to have equated the terms "adequate" and "best" in describing a mortgagee's duties in this context.  See Ulrich, 35 Haw. at 168, 170, 172-74; Kondaur, 361 P.3d at 462.  Further, pursuant to Kondaur, the burden is on Third Party Defendants to demonstrate that the non-judicial foreclosure satisfied the Ulrich requirements, which as discussed above, go beyond the duty to obtain the "best possible price" or an "adequate price" for the subject property.

For the foregoing reasons, the Court denies the Motion to Dismiss with respect to Count 3.  The Court notes that, in contrast to Count 1, see infra, the Court need not stay the consideration of the Motion to Dismiss with respect to Count 3 because Kama has sufficiently pled his claim for wrongful foreclosure pursuant to Kondaur and Ulrich.

## II.  The Court Stays Consideration of the Motion to Dismiss as to Count 1: Violation of HRS Chapter 667

Kama's Amended Complaint asserts violations of HRS Chapter 667, Hawaii's foreclosure statute.  Am. Compl. ¶¶ 89-97, ECF No. 29.  The court sua sponte stays consideration of the Motion to Dismiss with respect to Count 1.

In Ulrich and Kondaur, as discussed above, the Hawaii Supreme Court laid out a mortgagee's duties where the mortgagee purchases the subject property in a non-judicial foreclosure. In Kondaur, the court explained the relationship between the statutory requirements for non-judicial foreclosures, pursuant to HRS Chapter 667, and the requirements established in Ulrich. First, the court noted that the requirements that a mortgagee demonstrate that the sale was conducted "regularly and fairly" and that "an adequate price was paid . . . . were promulgated by the [Ulrich] court while fully recognizing" that application of such requirements "may sometimes mean obligating a mortgagee to act above and beyond the statutory requirements." Kondaur, 361 P.3d at 462 (citing Ulrich, 35 Haw. at 168, 172-73). Second, in determining Ulrich's applicability to non-judicial foreclosures of real property, the court noted that the amendments to the foreclosure statute enacted after Ulrich—which provide additional safeguards to mortgagors—led to the "conclusion . . . that the legislature approved of Ulrich and supplemented it with more robust statutory protections." Id. at 466. Third, the court held that "the Ulrich requirements are not statutorily or contractually based" and that "[i]nstead, they are separate and distinct from the requirements of the foreclosure statute and the operative mortgage." Id. at 470 (citing Ulrich, 35 Haw. at 172-73). Relatedly, the court held that even where a mortgagee

can establish "minimal adherence to the statutory requirements" of a non-judicial foreclosure, this will not in and of itself "establish that the foreclosure sale similarly satisfied the Ulrich requirements."  Id.

Based on the Hawaii Supreme Court's discussion of the statutory requirements in relation to the Ulrich requirements, the Court is unclear whether in a cause of action alleging only a violation of HRS Chapter 667, the Hawaii Supreme Court would also require that the Ulrich requirements be established.  Thus, in the instant case, the Court deems it possible that Kama has sufficiently pled a violation of HRS Chapter 667 based on his allegation that the mortgagee violated the duties set forth in Ulrich and affirmed in Kondaur.  Accordingly, the Court sua sponte stays consideration of Third Party Defendants' Motion to Dismiss with respect to Count 1, pending resolution of related appeals.  In particular, the Court is aware that the Hawaii Supreme Court currently has a case pending, Hungate v. Rosen, (which was argued in June of 2015, about two weeks before Kondaur), which raises, inter alia, a wrongful foreclosure claim in connection with claims that HRS Chapter 667 was violated by a mortgagee who also purchased the subject property.  Brief of Plaintiff-Appellant at 25-32, Hungate v. Rosen, SCAP-13-0005234 (Haw. Sept. 12, 2014).  The Court anticipates that resolution of the Hungate case will provide further guidance as to the

23

relationship between the statute and the duties laid out in
Ulrich and Kondaur.

Appeals currently pending before the Ninth Circuit
also invoke issues related to the interplay between HRS Chapter
667 and the duties established in Ulrich.  In Lima v. Deutsche
Bank National Trust Company, for example, Plaintiffs-Appellants
argue that common law duties established in Ulrich and other
Hawaii state cases are imposed on mortgagees through the power
of sale to provide "necessary protection for borrowers because
Chapter 667 has always been silent on critical aspects of the
foreclosure process."  Brief of Plaintiffs-Appellants at 33-34,
Lima et al. v. Deutsche Bank Nat'l Trust Co. et al., No. 13-
16091 (9th Cir. Oct. 4, 2013); see also id. at 35-43.  Although
Kondaur was decided by the Hawaii Supreme Court after Lima was
argued before the Ninth Circuit, resolution of Lima and related
cases will likely involve an analysis of the statutory
requirements in relation to the duties established in the
relevant caselaw, including Kondaur and Ulrich.

Therefore, as discussed further below, the Court
exercises its discretion to stay consideration of the Motion to
Dismiss with respect to Count 1 pending resolution of the appeal
in Hungate and other related cases.

**III. The Court Sua Sponte Stays Further Proceedings**

The Court may within its power stay proceedings in the interests of judicial efficiency and fairness.  See Landis, 299 U.S. at 254; Clinton, 520 U.S. at 706; see also Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005) ("A district court has discretionary power to stay proceedings in its own court . . . .").  For reasons of judicial economy, the Court may grant such a stay pending the outcome of other legal proceedings related to the case.  The Court notes it is not required that the other proceedings be "necessarily controlling of the action before the court."  Leyva, 593 F.2d at 863-64.  In determining whether a stay is appropriate, the court must consider

> the competing interests which will be affected by the granting or refusal to grant a stay . . . . Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Lockyer, 398 F.3d at 1110 (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).

The Court finds that staying proceedings pending the appeals of related cases will serve the interests of judicial efficiency and economy and will help to clarify the issues and questions of law going forward.  See Landis, 299 U.S. at 256

("True, a decision in the cause then pending in New York may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all."). As noted above, Hungate, currently pending before the Hawaii Supreme Court, involves issues directly related to the instant case with respect to wrongful foreclosures and violations of the foreclosure statute. Hungate also raises issues regarding the viability of a UDAP claim in the wrongful foreclosure context and in relation to HRS Chapter 667, claims at issue in Kama's Amended Complaint.

As mentioned above, the Court is also aware of appellate proceedings before the Ninth Circuit which are directly relevant to the instant case. In Gibo v. U.S. Bank N.A., Civ. No. 12-00514 SOM-RLP (Ninth Circuit Case No. 13-16092); Lima v. Deutsche Bank National Trust Company, Civ. No. 12-00509 SOM-RLP (Ninth Circuit Case No. 13-16091); and Bald v. Wells Fargo Bank, Civ. No. 13-00135 SOM-KSC (Ninth Circuit Case No. 13-16622), plaintiffs alleged wrongdoing by the mortgagee in connection with non-judicial foreclosure sales, raising UDAP claims and violations of HRS Chapter 667. On appeal to the Ninth Circuit, from this district court, the Bald, Gibo, and Lima plaintiffs frame the issues, inter alia, as whether the district court erred in dismissing claims brought under the UDAP statute, HRS § 480-2, where the plaintiffs allege that the banks

26

committed unfair and deceptive acts and practices by (1) offering the subject properties by quitclaim deed only and (2) selling the subject properties without publishing the continued foreclosure sale date.  See Briefs of Plaintiffs-Appellants in Bald et al. v. Wells Fargo Bank, N.A., et al., No. 13-16622 (9th Cir. Dec. 18, 2013); Gibo v. U.S. Bank et al., No. 13-16092 (9th Cir. Oct. 4, 2013); Lima et al. v. Deutsche Bank Nat'l Trust Co. et al., No. 13-16091 (9th Cir. Oct. 4, 2013).  Notably, as in these cases, Kama's Amended Complaint raises the issue that the mortgagee failed to publish the continued foreclosure sale dates.

The Court finds that resolution of the state and federal appellate cases will provide guidance with respect to many of the issues raised in Kama's Amended Complaint.  Although the rulings will likely not resolve all of the issues before the Court, they will probably assist the Court in determining threshold issues raised by Kama.  The Court is also concerned with the possibility of inconsistent rulings if the proceedings continue prior to resolution of the related appeals.  See, e.g., Karoun Dairies, Inc. v. Karlacti, Inc., No. 08CV1521 AJB WVG, 2013 WL 4716202, at *5 (S.D. Cal. Sept. 3, 2013) (noting inconsistent ruling "would likely extend litigation in order to address the inconsistent decisions" and "[a]s a result . . . would waste judicial time and resources as well as impose

27

further hardship and inequity to the parties"). Further, any prejudice caused by the temporary delay will be minimal given the state of the proceedings.[15]

Accordingly, the Court stays further proceedings in this matter, including discovery. Absent a change in circumstances, the stay shall remain in effect until July 1, 2016, at which time the parties are directed to contact the Court to schedule a status conference. The parties shall contact the Court if at any time during the stay the circumstances change or there are developments in the relevant appellate cases. In light of the stay, the Court administratively closes the case and vacates all previously scheduled proceedings (including trial) and all deadlines. The case will be deemed reopened when the stay is lifted.[16]

---

[15] The Court notes that Kama previously sought a stay in the case pending resolution of appellate proceedings. At that time, the Court denied Kama's request because the claims raised in Kama's original Complaint were distinct from the issues posed in the allegedly related appeals. See Order at 17-20, ECF No. 28. However, Kama's Amended Complaint raises additional issues, not previously before the Court, which make the stay appropriate at this time. The Court additionally notes that Kondaur had not been decided at the time of Kama's request to stay the proceedings.

[16] The Court's sua sponte stay of the proceedings moots Third Party Defendants' Motion to Stay the Case, or in the Alternative Continue Trial. ECF No. 70. Accordingly, the motion is denied. The Court notes that Kama filed a Notice of Non-Opposition to Third Party Defendants' Motion to Stay the Case, or in the Alternative Continue Trial. ECF No. 73.

## CONCLUSION

For the foregoing reasons, the Court DENIES IN PART AND STAYS IN PART Third Party Defendants' Motion to Dismiss. The Court denies the Motion to Dismiss as to Count 3 (wrongful foreclosure) and stays consideration of the Motion to Dismiss as to Count 1 (violation of HRS Chapter 667).  The Court stays this case until July 1, 2016, administratively closes the case, and vacates all previously scheduled proceedings (including trial) and all deadlines.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 9, 2016.

Alan C. Kay
Sr. United States District Judge

Federal Home Loan Mortgage Corporation v. Kama, Civ. No. 14-00137 ACK-KSC, ORDER 1) DENYING IN PART AND SUA SPONTE STAYING IN PART COUNTERCLAIM DEFENDANT AND THIRD PARTY DEFENDANTS' MOTION TO DISMISS COUNTS 1 AND 3 OF THE AMENDED THIRD PARTY COMPLAINT; AND 2) SUA SPONTE STAYING THE CASE